**Marion M. WINSTEAD, et al., Plaintiffs–Appellants,**

v.

**J.C. PENNEY COMPANY, INCORPORATED, Voluntary Employees Beneficiary Association, et al., Defendants–Appellees.**

No. 90–2647.

United States Court of Appeals, Seventh Circuit.

Argued April 17, 1991.

Decided May 30, 1991.

Thomas C. Nyhan, David S. Allen, James D. O'Connell, Margaret M. Fahrenbach, Joan P. Simmons, James P. Condon, Central States, Southeast & Southwest Area Pension Fund, Rosemont, Ill., for plaintiffs-appellants.

Lori S. Yokoyama, Manuel Sanchez, Sanchez & Daniels, Chicago, Ill., Laurence L. Duncan, J.C. Penney Co., Inc., Legal Dept., Dallas, Tex., for defendants-appellees J.C. Penney Co., Inc., Voluntary Employees Beneficiary Ass'n and Aetna Life Ins. Co.

David C. Bohrer, Orest Dachniwsky, Oppenheimer, Wolff & Donnelly, Chicago, Ill., Mary H. Thompson, Watson, Blanche, Wilson & Posner, Baton Rouge, La., for defendant-appellee Woman's Hosp. Foundation.

Before BAUER, Chief Judge, and WOOD, Jr., and POSNER, Circuit Judges.

POSNER, Circuit Judge.

This appeal presents a difficult and important question under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.* (ERISA). The question is whether the trustees of one ERISA plan against which a beneficiary has filed a claim can sue another, interlocking ERISA plan for a declaration that the second plan has the primary coverage and thus must pay the claim.

A child was born to an unmarried couple. The child had serious birth defects, and was treated in a Louisiana hospital at great expense, which was billed to the parents. The father was a participant in the Central States, Southeast and Southwest Areas Health and Welfare Fund, a multi-employer ERISA health plan, and he had enrolled the child in it as well. The mother was a participant in a similar plan, the J.C. Penney Plan, offered by her employer. The Central States plan provides that in a case of overlapping coverage of a child, if the parents are separated or divorced the benefits of the plan of the custodial parent must be exhausted before the Central States plan kicks in. Believing that the parents were "separated" within the meaning of the plan, Central States refused to pay the child's hospital bills. The Penney plan took the position that it was not liable for those bills because the child had never been properly enrolled in the Penney plan. Central States' trustees, believing that the child *was* covered by the Penney plan, brought this suit in federal district court in Chicago for a declaration that the Penney plan, not the Central States plan, was liable for the child's hospital expenses. The child's parents filed an ERISA suit in a Louisiana state court against both plans. The plans removed the case to a federal district court in Louisiana. The Penney plan filed a cross-claim against the Central States plan in the Louisiana action, basing jurisdiction on the ancillary jurisdiction of the federal courts, now called "supplemental" jurisdiction. 28 U.S.C. § 1367. The cross-claim seeks a ruling that the Central States plan rather than the Penney plan is liable for the hospital expenses. The Louisiana suit has been stayed pending the decision of this appeal, which is from the dismissal of the Central States suit for want of federal jurisdiction. 740 F.Supp. 1358 (N.D.Ill. 1990).

Nothing is more common than overlapping insurance coverage, and a common way in which disputes over which insurance carrier is liable to a particular claimant are resolved is by a suit for a declaratory judgment brought by one of the carriers against the other. The insured benefits from this procedure by not having to sue to establish his claim. The insurers benefit also, especially where the suit is brought before the insured has filed a claim, so that the insurers can minimize the risk of being made to pay punitive damages for refusing, in bad faith, to honor the insurance contract. 16A John Alan Appleman & Jean Appleman, *Insurance Law and Practice* § 8878.65 (1981); 20 *id.*, § 11354 (1980). The ERISA plans that are contending in this case are in effect health insurers, and

it was perfectly natural therefore for the trustees of the Central States plan to bring this suit against the Penney plan for a declaration that that plan had the primary coverage. While we have held that punitive damages are not recoverable in suits against ERISA fiduciaries, *Kleinhans v. Lisle Savings Profit Sharing Trust*, 810 F.2d 618, 626–27 (7th Cir.1987), a subsequent decision describes the question as an open one, though barely. *Petrilli v. Drechsel*, 910 F.2d 1441, 1448–49 (7th Cir.1990). So simple prudence dictated Central States' course, which also gave Central States its choice of forum.

■ Uncertainty over whether Central States' suit against the Penney plan would be allowed to proceed, however, led the beneficiaries to bring their own suit, against both plans. This was an expense to the beneficiaries, but at least they were able to sue both plans in the same court. Suppose they could not have gotten jurisdiction over both plans in either Louisiana or any other state. Then they would have had to bring two suits, in two states, at added cost—and they might have lost both suits, since a judgment in one could not be used to preclude the defendant in the other; they would be different defendants, not in privity with one another. Indeed the two decisions, though opposite, might be consistent: "Each carrier may say that the other is responsible, and neither decision will be arbitrary." *Foster McGraw Hospital v. Building Material, Etc., Welfare Fund*, 925 F.2d 1023, 1024 (7th Cir.1991). One might hope that the court in any separate suit against the Central States plan would have stayed its hand until the suit against the Penney plan had been resolved, to make sure the parents' claim didn't fall between two stools. But there would be no way to guarantee this.

■ We may be speaking not only of precluding *federal court* declaratory judgment actions by ERISA plans, if the district court's jurisdictional ruling is upheld, but of precluding all such actions. ERISA's broad preemption provision, which provides with an immaterial exception that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan," 29 U.S.C. § 1144(a), would prevent Central States' trustees from maintaining this suit under state law. *FMC Corp. v. Holliday*, —— U.S. ——, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990). That is not the end of the analysis; a suit could arise under federal law yet be litigable only in state courts because Congress had withheld federal jurisdiction. That was the situation of some federal-question cases before the minimum amount in controversy was stricken from 28 U.S.C. § 1331. Until then, state courts were the exclusive forum for small federal claims unless the claims were within the scope of another federal jurisdictional statute. Indeed, before the Act of March 3, 1875, ch. 137, 18 Stat. 470, there was no general federal-question jurisdiction, so state courts were the exclusive forum for such cases regardless of amount in controversy. But it is hard to see why Congress might have wanted to give state courts exclusive, or any, jurisdiction over ERISA declaratory judgment suits *between plans (or trustees of plans)*, when ERISA expressly authorizes participants and beneficiaries, as distinct from fiduciaries, to bring such suits in federal court. 29 U.S.C. §§ 1132(a)(1)(B), (e)(1); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 53, 107 S.Ct. 1549, 1556, 95 L.Ed.2d 39 (1987). Even if a participant or beneficiary sues in state court, the defendant is likely to remove to federal court, as happened with the Louisiana action. What sense would it make for declaratory judgment actions by participants and beneficiaries to be litigable, in practical effect, only in federal court, and such actions by fiduciaries to be litigable only in state court? It makes more sense that the latter actions either are not litigable at all or, better, that they too are litigable in federal court.

■ But it is not enough that there are good, even compelling, reasons for federal jurisdiction in a case such as this. Federal jurisdiction is a creature of statute. We must find a statutory basis for the assumption of jurisdiction. The first possibility is ERISA itself, which in 29 U.S.C.

§ 1132(a)(3)(B) provides that a "civil action may be brought ... by a ... fiduciary ... to enforce ... the terms of the [ERISA] plan." Whether the Central States plan itself is a fiduciary within the meaning of ERISA, 29 U.S.C. § 1002(21)(A)—*Saramar Aluminum Co. v. Pension Plan for Employees of Aluminum Industry,* 782 F.2d 577, 581 (6th Cir.1986), so holds, but *Pressroom Unions–Printers League Income Security Fund v. Continental Assurance Co.,* 700 F.2d 889, 893 and n. 3 (2d Cir. 1983), expresses doubt well-founded in the language of the statute ("a person is a fiduciary with respect to a plan to the extent ... he exercises any discretionary authority or discretionary control respecting management of such plan," etc.)—is of no consequence. The trustees of the Central States plan indisputably are ERISA fiduciaries, and they are the plaintiffs in this suit. But the Penney plan argues that section 1132(a)(3)(B), in empowering fiduciaries to sue, has reference to a fiduciary's enforcing his own plan, not someone else's plan. It is happenstance that the Penney plan is an ERISA plan too. Suppose Penney were a free-standing health insurance company that had written a policy wholly outside ERISA. If a suit by the trustees of Central States seeking a declaratory judgment against our hypothetical Penney would be outside the grant of jurisdiction in section 1132(a)(3)(B), this suit must be outside that grant also, since the status of the Penney plan under ERISA is completely unrelated to Central States' interests, or to the arguments of policy that might make such suits a desirable adjunct to ERISA.

■ Although the question of the right of the trustees of Central States to sue must be answered the same whatever the defendant's status under ERISA, it does not follow that Central States' trustees must lose. Their suit is within the literal terms of the statute. The trustees are fiduciaries, and while there is a sense in which they are suing to enforce the Penney plan, there is an equally good sense in which they are suing to enforce their own plan. To enforce is to effectuate. The coordination-of-benefits provision is a part of the Central States plan. Its effectuation requires that the terms of any overlapping health plans be honored by the administrators of those plans. Otherwise the coordination-of-benefits provision would be a nullity. Other plans would routinely deny coverage, the beneficiary would turn to Central States, and Central States would be left holding the bag. A suit to enforce a coordination-of-benefits provision is a suit to enforce the plan in which the provision appears. That is a fair characterization of this lawsuit and the one that makes most sense in terms of promoting the goals of ERISA and, more broadly, of facilitating the expeditious and economical administration of justice.

The other possibility is that this suit is within the general federal question jurisdictional statute. 28 U.S.C. § 1331. Given ERISA's broad preemption provision, virtually every suit relating to an ERISA plan— and that is an unimpeachable characterization of this suit—can be said to arise under federal law, and hence to be within the jurisdiction of the federal courts by virtue of section 1331. But then one wonders why Congress went to the trouble in ERISA of specifying in considerable detail the kinds of suits (including suits by fiduciaries to enforce their plans) that are within federal jurisdiction. ERISA's jurisdictional provisions are unusually detailed and it is tempting to suppose that the more detailed a statute is, the less likely legislative mistake and omission are and so the less room there is for judicial interpolation of missing terms. This is indeed a popular supposition, and was invoked with specific reference to ERISA's jurisdictional provisions in *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 146–47, 105 S.Ct. 3085, 3092–93, 87 L.Ed.2d 96 (1985). But like many "canons of construction," it is dubious and unexamined. Detailed statutes such as ERISA and the Bankruptcy Code bristle with interpretive conundra. A statute may be detailed not because the draftsmen quixotically undertook to resolve all possible interpretive questions before they arose but because a number of specific problems were brought to their attention and they tried to solve them. There may

have been an equal number of problems that were not raised and therefore—because Congress is too busy to resolve problems that are entirely hypothetical—not provided for. It is perverse on the one hand to penalize draftsmen for having made detailed provision for the problems that were brought to their attention by denying them a helping judicial hand in the problem areas they did not foresee, and on the other hand to treat a lazily drafted statute, worded in generalities, as a broad delegation to the judiciary to create a sensible code of governance.

The legal mind craves an orderly legal universe—a seamless web of rationality—in which every word in a statute or in a contract or in a judicial opinion has a unique and indispensable function and in which there are no gaps and no redundancies. Yet there are *loads* of gaps and redundancies in the law. Of specific relevance here, the elimination of the minimum amount in controversy from section 1331 made of the numerous special federal jurisdictional statutes that required no minimum amount in controversy (28 U.S.C. §§ 1337, 1340, and 1343 and many others) so many beached whales, yet no one thought to repeal those now-redundant statutes.

It is apparent that Congress, while it gave careful consideration to a vast number of issues that might arise in the administration of the new federal pension law, overlooked a vast number of other issues—including that of declaratory judgment actions by ERISA plans containing coordination-of-benefits provisions. For such omissions, which seem neither deliberate nor consistent with administering the statute sensibly in accordance with its overall goals and structure, section 1331 would provide a suitable remedy, as held in *Northeast Dept. ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund*, 764 F.2d 147, 154–59, 164–66 (3d Cir.1985), and other cases illustrated by *Airco Industrial Gases, Inc. v. Teamsters Health & Welfare Pension Fund*, 850 F.2d 1028, 1033 and n. 5 (3d Cir.1988), and *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 988–91 (4th Cir.1990)—were it necessary to plug a

hole in ERISA's jurisdictional provisions. But (here parting company from *Northeast Dept. ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund, supra*, 764 F.2d at 151–54, 164–65), we do not think it necessary; there is no hole. We do no semantic violence to section 1132(a)(3) when we interpret it to allow an ERISA plan to bring a declaratory judgment action to determine the extent of its liability, and we promote the goals of ERISA by that interpretation. It is no objection that the court in such a suit will often have to construe the terms of another plan, or of an insurance policy, for the effect of a coordination-of-benefits provision is to incorporate all plans and policies that duplicate the coverage provided by the plaintiff plan.

■ A further consideration, which caused the lawyer for the Penney plan more than a few moments of awkwardness at the argument of the appeal, supports our conclusion. If there is no federal jurisdiction over the Central States trustees' claim against the Penney plan, there is no federal jurisdiction in Louisiana over the Penney plan's cross-claim against Central States. For there is no such thing as a claim that lies *only* within federal ancillary jurisdiction. Such jurisdiction is a device for bringing into federal court claims that, but for the considerations of economy of litigation that power the device, *Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357, 360 (7th Cir.1990), would have to be litigated elsewhere. 13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3523 (2d ed. 1984). It is not a device for *creating* actionable claims. The new statute codifying under the name of supplemental jurisdiction the doctrine of ancillary (including pendent) jurisdiction helps make this transparent by stating that "the district courts shall have supplemental jurisdiction over all other *claims* that are so related to claims in the [original] action," etc. 28 U.S.C. § 1367(a) (emphasis added). On a more practical level, if as the Penney plan contends Congress was determined to close both state court and federal court doors to suits by ERISA plans (or their trustees) against providers of overlapping

coverage, the federal courts should not thwart Congress's desire by allowing these suits to be brought as cross-claims. The Penney plan is unwilling to concede this corollary to its position in the present suit. It wants to litigate with Central States, but it wants to litigate in Louisiana rather than in Illinois—thereby conceding, it seems to us, that allowing declaratory judgment actions by ERISA plans is in the interest not only of beneficiaries but also of the plans themselves. It is not against the grain of ERISA's jurisdictional provisions.

As a detail we note that, as far as appears, the cross-claim in Louisiana has been brought by the Penney plan itself, not by its trustees. An ERISA plan can sue and be sued, 29 U.S.C. § 1132(d)(1), but it is doubtful, as noted earlier, that it can sue under a provision that confers a right of action on a fiduciary. We cannot see how, if the present suit can't be maintained, the cross-claim in Louisiana can be—and we even have some doubts whether that cross-claim can be maintained in any event if the trustees of the Penney plan are not parties to the suit.

In any event this case should not have been dismissed for want of federal jurisdiction. The judgment is therefore

REVERSED.