In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2022

Rita Moreno Gallegos,

Plaintiff-Appellant,

v.

Mt. Sinai Medical Center and UNUM
Life Insurance Company of America,

Defendants-Appellees.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 6207--Joan B. Gottschall, Judge.


Argued January 6, 2000--Decided April 27, 2000




        Before Coffey, Flaum and Kanne, Circuit Judges.

        Flaum, Circuit Judge.  Rita Moreno Gallegos was
an employee of Mt. Sinai Medical Center ("Mt.
Sinai") who applied for employee welfare benefits
with Mt. Sinai's insurance carrier UNUM Life
Insurance Company of America ("UNUM"). Her
request for benefits was denied, and Gallegos
filed suit, claiming that this denial violates
the Employee Retirement Insurance Security Act
("ERISA"), 29 U.S.C. sec. 1001, et seq. The
district court granted summary judgment to the
defendants. For the reasons stated below, we
affirm.

I.  BACKGROUND

        Gallegos was employed by Mt. Sinai as a
marketing director from 1990 until 1994. Her job
responsibilities included coordinating health
fairs and conducting other marketing activities
in the community. As part of her job she had to
travel frequently throughout the surrounding
area, carry and set-up display equipment, and
stand for significant periods of time.

        Gallegos was insured under Mt. Sinai's Employee
Long Term Disability Plan (the "Plan").
Gallegos's policy (the "Policy") was administered
by Mt. Sinai and underwritten by UNUM. The Policy

provides long-term disability benefits for employees who meet the Plan's requirements. The Plan does not indicate that there are any time limits for appealing denials of claims. However, the summary plan description ("Summary Plan") contains the following statements:

What are your rights under ERISA?

****

5. If your claim for a benefit is denied in whole or in part you must receive a written explanation of the reason for the denial. You have the right to have the Plan review and reconsider your claim.

6. . . . . If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court. . . . The court will decide who should pay court costs and legal fees. If you are successful the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous./1

What if your claim is denied?

In the event that your claim is denied, either in full or in part, the insurance company will notify you in writing within 90 days after your claim form was filed. . . . The insurance company's notice of denial shall include:

***

3. The steps to be taken if you or your beneficiary wish to have the decision reviewed.

What do you do to appeal?

You, the claimant, or your authorized representative may appeal a denied claim within 60 days after you receive the insurance company's notice of denial. . . .

On December 16, 1994, Gallegos stopped working because she suffered from multiple severe medical conditions including congestive heart failure, chronic obstructive pulmonary disease, chronic active hepatitis C, and residual systemic complications resulting from the chemotherapy treatment she had received for breast cancer two years earlier. On July 6, 1995, after it became apparent that Gallegos would not be able to return to work, Gallegos made a timely application for disability benefits under the Plan. This application was accompanied by a statement from Gallegos's physician Dr. Benson

stating that Gallegos's illnesses prevented her from performing any non-sedentary occupation. The application also included a job description provided by Mt. Sinai indicating that Gallegos's current position as director of marketing frequently required her to travel, stand, walk and lift or carry equipment weighing 25-50 pounds.

UNUM initially approved Gallegos's application for disability benefits on August 15, 1995. UNUM awarded Gallegos monthly benefits equivalent to the amount specified in the Policy minus the amount that Gallegos was receiving in Social Security benefits. Gallegos's Social Security benefits were terminated in October 1995. On November 7, 1995, Gallegos reapplied for Social Security benefits. On November 8, 1995, Gallegos informed UNUM that her Social Security benefits had been terminated and requested that her UNUM insurance disbursement be increased to the full amount she was entitled to receive because the amount she had previously received from Social Security should no longer be deducted. On January 25, 1996, the Social Security Administration ("SSA") denied Gallegos's reapplication for benefits, and Gallegos appealed this decision. On March 7, 1996, UNUM telephoned Gallegos to assess the status of her Social Security appeal, and Gallegos informed UNUM that there had been no ruling as of that date.

On March 14, 1996, UNUM requested an update from Dr. Benson on Gallegos's medical status. On May 13, 1996, UNUM received a letter and medical records from Dr. Benson that stated that in order for Gallegos to return to work she would need "[n]ew lungs, a new heart and a new liver." Dr. Benson again stated that Gallegos was able to perform only sedentary work. The medical records that accompanied the letter indicated that Gallegos's condition had worsened since she had stopped working in 1994.

On June 11, 1996 UNUM wrote to Gallegos (the "June 11 Letter"), informing her that it was terminating her disability benefits because it had determined that her occupation of "Marketing Director" was a sedentary occupation to which she was eligible to return according to the information provided by Dr. Benson. The June 11 Letter included the following statements:

If you have any new, additional information to support your request for disability benefits, please send it to [UNUM's] attention at the above address.

If you do not agree with our decision, you may have it reviewed. Should you desire a review, you

must send a written request, within 60 days of your receipt of this notice. . . .

If UNUM does not receive the written request within 60 days of your receipt of this notice, our claims decision will be final.

On April 10, 1997, an SSA administrative law judge ("ALJ") issued a decision determining that Gallegos was disabled as of December 16, 1994, and reinstating her Social Security benefits. On April 18, 1997, Gallegos's attorney wrote to UNUM providing notice of the ALJ's decision reinstating Gallegos's Social Security benefits. In this April 18 letter, her attorney noted that the 60-day review period had passed but indicated that the additional information was only recently available and could not have been provided to UNUM before the expiration of the deadline.

On July 9, 1997, Gallegos's attorney again wrote to UNUM requesting that UNUM reopen Gallegos's claim based on the ALJ's determination that Gallegos was disabled and the attorney's contention that Gallegos's occupation was more appropriately categorized as "public health educator," a non-sedentary position, rather than "marketing director," a sedentary one. On July 31, 1997, UNUM responded in writing that it would not reopen Gallegos's claim because she had made her request for review more than 60 days after the denial of benefits.

Gallegos filed suit in federal district court alleging that UNUM wrongfully denied her benefits in violation of 29 U.S.C. sec. 1132(a)(1)(B). The district court entered summary judgment in favor of UNUM, finding that Gallegos had failed to exhaust her administrative remedies by not filing for a review of her claim within the 60-day deadline outlined in the Summary Plan. Gallegos now appeals.

II.  DISCUSSION

The text of 29 U.S.C. sec. 1132, providing for civil actions to redress violations of ERISA, does not address whether a claimant must exhaust her administrative remedies before filing suit in federal court. See Powell v. AT&T Comm., Inc., 938 F.2d 823, 825 (7th Cir. 1991); Kross v. Western Elec. Co., Inc., 701 F.2d 1238, 1244 (7th Cir. 1983). However, it has long been recognized in this Circuit that the intent of Congress is best effectuated by granting district courts discretion to require administrative exhaustion. See Powell, 938 F.2d at 825; Kross, 701 F.2d at 1244. This policy of judicial administration furthers the goals of minimizing the number of frivolous lawsuits, promoting non-adversarial

dispute resolution, and decreasing the cost and time necessary for claim settlement. See Lindemann v. Mobil Oil Corp., 79 F.3d 647, 649 (7th Cir. 1996). Furthermore, requiring administrative exhaustion enables the compilation of a complete record in preparation for judicial review. See id.; Powell, 938 F.2d at 826. Therefore, the district court in this case had the discretion to require that Gallegos exhaust the administrative remedies available to her before being permitted to bring suit in federal court under 29 U.S.C. sec. 1132. We will overturn the district court's decision in this matter only for a clear abuse of discretion. See Ames v. American Nat'l Can Co., 170 F.3d 751, 756 (7th Cir. 1999); Powell, 938 F.2d at 825; Kross, 701 F.2d at 1244. An abuse of discretion is "a serious error of judgment, such as reliance on a forbidden factor or failure to consider an essential factor." Powell, 938 F.2d at 825.

A.   Excuse of Failure to Exhaust

We have held that a plaintiff is excused from failing to pursue administrative remedies where 1) administrative remedies are not available or 2) pursuing those remedies would be futile. See Robyns v. Reliance Standard Life Ins. Co., 130 F.3d 1231, 1236 (7th Cir. 1997); Wilczynski v. Lumbermens Mutual Casualty Co., 93 F.3d 397, 402 (7th Cir. 1996); Smith v. Blue Cross & Blue Shield United of Wisc., 959 F.2d 655, 658-59 (7th Cir. 1992)./2 Gallegos does not assert that attempts to pursue administrative review would have been futile. However, Gallegos claims that administrative review procedures were not adequately provided to her. Gallegos argues that the denial of her application as time barred is a denial of access to review that should excuse her from having to exhaust her administrative remedies.

ERISA regulations permit time limitations on applications for review that are no less than 60 days. 29 C.F.R. sec. 2560.503-1(g)(3). Failure to file a request for review within this limitations period is one means by which a claimant may fail to exhaust her administrative remedies. See Smith, 959 F.2d at 658. UNUM provided a clear statement of the limitations period in both the Summary Plan and in the June 11 Letter. This statement is sufficient to satisfy ERISA's notice requirement for review procedures. See Ames, 170 F.3d at 756. Thus, UNUM's denial of Gallegos's request for review that was filed beyond the 60-day time limit does not constitute a denial of access to administrative review. See id.

B.   Estoppel

Gallegos next argues that UNUM should be estopped from asserting her failure to exhaust administrative remedies as a defense to her suit in federal court. Gallegos argues that statements in the Summary Plan and June 11 Letter are misleading in that a plain reading conveys to the average participant that UNUM's administrative review procedure is wholly voluntary and does not affect the ability of a participant to pursue relief through the federal court system. Gallegos contends that the two options for review of her denied claim were presented as co-equal, not interdependent. She argues that because UNUM provided misleading information in the Summary Plan and the June 11 Letter concerning the effects of failing to file an administrative appeal, UNUM should now be estopped from asserting failure to exhaust administrative remedies as a defense to her suit under ERISA.

This Court has repeatedly held that estoppel may be applied in certain ERISA actions. See Coker v. Trans World Airlines, Inc., 165 F.3d 579, 585 (7th Cir. 1999) ("This court . . . has recognized a form of estoppel as a matter of federal common law in at least some ERISA cases."); Thomason v. Aetna Life Ins. Co., 9 F.3d 645, 649-50 (7th Cir. 1993); Russo v. Health, Welfare & Pension Fund, 984 F.2d 762, 767 (7th Cir. 1993); Vershaw v. Northwestern Nat'l Life Ins. Co., 979 F.2d 557, 559 (7th Cir. 1992); Black v. TIC Investment Corp., 900 F.2d 112, 112 (7th Cir. 1990). When determining whether to apply estoppel, we have considered ERISA's prohibition against oral modifications of written plans and have determined that estoppel in the ERISA context only applies to written, and not to oral, misrepresentations. See Thomason, 9 F.3d at 649-50; Decatur Mem'l Hosp. v. Connecticut Gen. Life Ins. Co., 990 F.2d 925, 927 (7th Cir. 1993); Russo, 984 F.2d at 767. In addition, while we have determined that estoppel may be applied to single-employer unfunded plans, we have expressed reservations about employing estoppel in other contexts. See Black, 900 F.2d at 115 (stating that concerns for the actuarial soundness of multi-employer funded plans may militate against applying estoppel in that context).

The determination of when to apply estoppel "is not so much a question of statutory interpretation as a question of public policy." Black, 900 F.2d at 114. The basic policy consideration arguing in favor of applying estoppel is the principle of contract law that "a party who prevents the occurrence of a condition precedent may not stand on that condition's non-occurrence to refuse to perform his part of the contract." Swaback v. American Info. Techs. Corp., 103 F.3d 535, 542 (7th Cir. 1996). We have

applied estoppel principles to ERISA claims where the claimant was misled by written representations of the insurer or plan administrator into failing to take an action that would have enabled the claimant to receive benefits under the Plan. See id. at 542-43 (holding that a claimant could proceed with an ERISA suit in federal court in spite of his failure to timely elect a lump-sum pension payment because his failure to elect was a result of the insurer's erroneous written statements that the claimant was ineligible to receive this type of payment); Meredith v. Allsteel, Inc., 11 F.3d 1354, 1358 (7th Cir. 1993) (finding that employees who failed to timely elect early retirement benefits were not barred from suit in federal court where their failure to elect was caused by the employer's misrepresentation that they were ineligible to receive those benefits), overruled on other grounds by Ahng v. Allsteel, Inc., 96 F.3d 1033 (7th Cir. 1996). We have also applied estoppel in an ERISA suit where the defendant insurer misrepresented the contractual limitations period in the plan summary because we determined that "a defendant whose own activities made the plaintiff miss the deadline should [not] be allowed to litigate over whether the plaintiff could have sued earlier." Doe v. Blue Cross & Blue Shield United of Wisc., 112 F.3d 869, 876 (7th Cir. 1997).

The administrative exhaustion requirement is not intended to place a meaningless procedural hurdle in front of plaintiffs who desire to bring claims for violations of their rights under ERISA in federal court. Such a purpose would contravene the express intent of the ERISA statute to "protect . . . the interests of participants in employee benefits plans . . . by . . . providing . . . ready access to the Federal courts." 29 U.S.C. sec. 1001(b). Rather, the requirement is aimed at encouraging claimants to pursue private remedies and develop a proper administrative record before entering federal court. Allowing an insurance company to mislead a claimant into procedurally defaulting her opportunity for administrative review would contravene the purpose behind requiring administrative exhaustion. Furthermore, where a limitations period is imposed by a contract rather than by statute, the public policy considerations that typically weigh in favor of strict enforcement of the limitations period do not apply. See Doe, 112 F.3d at 877. This is especially true where one of the parties to the agreement "does something that makes it inequitable to hold the other party to the shortened period" because then "there is no social interest in preventing the period from being enlarged." Id. Therefore, we hold that estoppel may be applied to preclude the assertion

of failure to exhaust administrative remedies as a defense where that failure results from the claimant's reliance on written misrepresentations by the insurer or plan administrator./3

In this case, Gallegos alleges that UNUM made misleading representations in the Summary Plan and June 11 Letter concerning the consequences of her failure to pursue an administrative appeal. We interpret an ERISA plan summary with its plain meaning as understood by an average person. See 29 U.S.C. sec. 1022(a) ("The summary plan description . . . shall be written in a manner calculated to be understood by the average plan participant."); Swaback, 103 F.3d at 540-41. ERISA summary plan descriptions are required to be "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. sec. 1022(a). This description must include "the remedies available under the plan for the redress of claims which are denied in whole or in part (including procedures [for administrative review])." 29 U.S.C. sec. 1022(b); see 29 U.S.C. sec. 1021(a).

In this case, UNUM attempted to comply with the requirements of ERISA by informing Gallegos of her options to pursue relief of the denial of her claim through UNUM's administrative review procedure as well as through the federal court system. Gallegos asserts, however, that what UNUM did not tell her was that if she elected not to pursue an administrative review of her claim, UNUM would use this choice as a defense against her in any subsequent federal suit. We agree with Gallegos that the use of phrases such as "you may have [your claim] reviewed," "should you desire a review," "if you . . . wish to have the decision reviewed," and "you . . . may appeal," given their plain meaning, indicate that a plan participant has the opportunity to participate in a voluntary, rather than mandatory, review procedure. The only penalty mentioned for failure to submit to administrative review is that the claims decision will become "final." There is no indication that this "finality" may have consequences for the bringing of a suit in federal court, an option which the claimant is also informed she "may" pursue. A natural reading of the plain language of the Summary Plan and June 11 Letter is that both a court suit and an administrative appeal are voluntary options for review of a denial of a claim. The administrative appeal has a limitations period of 60 days from the denial of the claim, and the limitations period for a court suit, while not defined in the Summary Plan, is stated in the Plan as three years from the time when proof of a claim is required.

In Black v. TIC Investment Corp., we held that a plan administrator's written representation to the claimant that his benefits would be forthcoming upon completion of bankruptcy proceedings estopped the administrator from contesting the claim because "[n]o fair reading of the language would give a casual reader notice that [the defendant] intended to contest any claim." 900 F.2d at 116. We concluded that if the claimant could demonstrate that he relied to his detriment on the defendant's implied representation that it would not contest his claim to benefits, the defendant was estopped from contesting the claim. Id. Similarly, in this case, a casual reader of the Summary Plan would not be put on notice that an insured's election not to pursue administrative remedies would be used by UNUM as a defense to a suit brought in federal court.

However, "[a]n estoppel arises when one party has made a misleading representation to another party and the other has reasonably relied to his detriment on that representation." Black, 900 F.2d at 115; see Russo, 984 F.2d at 768; Thomason, 9 F.3d at 648. Thus, Gallegos must also demonstrate that she relied to her detriment on UNUM's representations. See Swaback, 103 F.3d at 543 (finding that a claimant must show that "but for" the misrepresentations of the insurer he would have met the deadline imposed by the insurance contract). Gallegos must show that, based upon the representations made by UNUM, she thought that the two options for reviewing the denial of her claim--a federal court suit or an administrative appeal--were equally available to her, and she must also show that she chose to pursue the route of a court suit rather than administrative review, unaware that this choice was potentially fatal to her ability to receive any review of the denial of her claim.

We conclude that Gallegos has not demonstrated that she relied on UNUM's representations to her detriment because she has not shown that but for UNUM's representations she would have filed an administrative appeal within the 60-day limitations period. Gallegos asserts that she was unrepresented by counsel at the time her claim was denied, and, therefore, that she was unable to know that one of the potential consequences of failing to pursue an administrative appeal was that she may also be barred from bringing suit to assert her rights under ERISA. However, she does not allege that she allowed the time for her appeal to lapse because she had chosen to pursue relief from the denial of her claim through a federal court suit rather than administrative review. If anything, Gallegos's contentions

support the conclusion that during the 60-day limitations period she elected not to appeal her claim at all, not that she elected to pursue an avenue of relief with a longer statute of limitations.

We find that while the presentation of the options for review of denied claims in UNUM's Summary Plan and June 11 Letter was misleading, Gallegos did not rely on any of UNUM's misleading statements in deciding not to pursue an administrative appeal within the 60-day deadline. Therefore, UNUM is not estopped from asserting failure to exhaust administrative remedies as a defense to Gallegos's suit in federal court, and the district court did not abuse its discretion by granting summary judgment to UNUM on this basis.

III.  CONCLUSION

For the reasons stated herein, we Affirm the district court's grant of summary judgment in favor of the defendant.

/1 The Plan provides the following information: Can legal proceedings be started at any time? No, you or your authorized representative cannot start any legal action:

1. until 60 days after proof of claim has been given; nor

2. more than 3 years after the time proof of claim is required.

/2 Gallegos raised before the district court several other reasons why administrative exhaustion should not be applied in her case. Gallegos does not argue those additional contentions on appeal, and we consider them waived.

/3 For purposes of this opinion, we assume that this case involves a single-employer unfunded plan, and we again decline to reach the question of whether estoppel may be applied outside of this context.