**Brenda Lee JONES, Individual, and as the Personal Representative for The Estate of Tom Ray Jones Plaintiffs,**

v.

**STATE WIDE ALUMINUM, INC., Partners National Health Plans of Indiana, Inc., North America Administrators, L.P., Defendants.**

**No. 3:02–CV–228–RM.**

United States District Court,
N.D. Indiana,
South Bend Division.

Feb. 20, 2003.

Robert J Konopa, Sean E Kenyon, Claire Konopa Aigotti, Konopa Reagan & Kenyon PC, South Bend, IN, for Plaintiffs.

Michael J Nader, Karen T Moses, Baker and Daniels, Fort Wayne, IN, Kennard R Weaver, Christopher J Spataro, Baker and Daniels, Elkhart, IN, for Defendants.

### MEMORANDUM AND ORDER

MILLER, District Judge.

Doctors diagnosed Tom Ray Jones with leukemia on March 4, 2001. This sad discovery touched off a legal dispute over who would fund Mr. Jones's fight against the disease (a fight he lost on August 6, 2002). Mr. Jones was covered by two ERISA qualified health plans, State Wide,[1] and Partners, an HMO, each of which decided the other was obligated to pay. At the heart of the dispute is an escape clause in State Wide's plan that absolves it of the duty to pay a plan member's health care costs if that person is also covered by, and receives treatment through, an HMO. Partners and Mrs. Jones [2] say federal common law has banished this clause from the ERISA world. State Wide takes a different view. Before the court resolves this dispute, it faces the issue of exhaustion— whether the plaintiff needed to exhaust her internal plan remedies before bringing suit against State Wide, and if so, whether she did so.[3] For the reasons stated below, the court finds that the exhaustion requirement applied and was unfulfilled and that the court should not create federal common law to stamp out the escape clause.

### Facts

Mr. and Mrs. Jones applied to both State Wide and Partners for reimbursement for their mounting medical bills. State Wide paid these bills initially, but decided on further review that the escape clause applied to Mr. Jones's situation. Beginning on May 31, 2001, State Wide ceased paying Mr. Jones new medical bills and began contacting those it had already paid in search of refunds. State Wide's change of heart prompted the Joneses to

---

**1.** When the court refers to the State Wide plan, it refers to two defendants, State Wide Aluminum and North America Administrators.

**2.** Mrs. Jones is Mr. Jones' widow. For clarity's sake, the court often mentions Mrs. Jones, rather than Mrs. Jones and Mr. Jones, when referencing the plaintiffs' actions.

**3.** Partners waived the exhaustion defense by not raising it. *McCoy v. Board of Trustees of the Laborers' International Union, Local No. 222 Pension Plan,* 188 F.Supp.2d 461, 467–468 (D.N.J.2002) (finding that exhaustion under ERISA is an affirmative defense).

reapply to Partners. At the outset, Partners warmly received this new application and started paying Mr. Jones's bills. Like State Wide before it, though, Partners had a change of heart and stopped paying Mr. Jones's bills.

Partners became convinced for two reasons that State Wide owed Mr. Jones for these bills. First, both plans had a coordination of benefits clause-language in a health care plan that addresses coordination of coverage with another plan when both plans cover the same person-that called on the employer's plan to be the primary payor in the case of dual coverage. That was State Wide. Second, Partners thought that the escape clause, which otherwise would trump the choice of benefits clauses, was illegal and unenforceable *ab initio*. The escape clause reads, "[i]f you and/or your eligible dependents while covered under this plan [sic] are also covered under an HMO (Health Maintenance Organization) provided by another employer and receive treatment through the HMO provider, no benefits will be payable for such treatment under this Plan." State Wide Plan at 26 (attached as exhibit A to Plaintiffs' Motion for Partial Summary Judgment).

Mrs. Jones sued both plans under a variety of legal theories[4] and moved for summary judgment against both plans. She bases her summary judgment motion against State Wide on the unenforceability of the escape clause and waiver; she says that by paying some of Mr. Jones's bills before deciding that the escape clause applied, State Wide had waived its right to deny Mr. Jones coverage. Her summary judgment against Partners simply asks the court to declare that Partners owes her coverage regardless of the court's ruling on the escape clause because Partners has a secondary coverage clause indicating that it will pay the excess amount not covered by the other plan in the event of dual coverage. That is, if the escape clause is enforceable, Partners is on the hook as the primary payor, and if the clause is not enforceable, Partners' responsibility is simply that of a secondary payor.

State Wide and Partners did not sit idly. Partners lodged a cross claim against State Wide for a declaratory judgment invalidating the escape clause, and later sought judgment on the pleadings on its cross claim. State Wide responded with a summary judgment motion against Partners on the declaratory judgment cross-claim. Also pending are a motion for oral argument and a motion urging the court to consider Partners' motion for judgment on the pleadings only after all of the other motions were fully briefed.

*Exhaustion*

Although much turns on the court's view of the escape clause, the court begins with Mrs. Jones's summary judgment motion against State Wide first because that motion raises the issue of exhaustion. Summary judgment for Mrs. Jones would be proper if "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding whether a genuine issue of material fact exists, the court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91

---

4. Jurisdiction is based on 28 U.S.C. § 1331 (providing statutory federal question jurisdiction) as her cause of action arises under 29 U.S.C. § 1132(a)(1)(B) (granting plan participants the right to sue for benefits due under their plans).

L.Ed.2d 202 (1986). No genuine issue of material fact exists when a rational trier of act could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the non-moving party. *Ritchie v. Glidden Company*, 242 F.3d 713, 720 (7th Cir.2001). "[N]either the mere existence of some alleged factual dispute between the parties, nor the existence of some metaphysical doubt as to material facts is sufficient to defeat such a [summary judgment] motion." *Holtz v. J.J.B. Hilliard W.L. Lyons, Inc.*, 185 F.3d 732, 738 (7th Cir. 1999) (internal citations and quotations omitted).

 State Wide responds to Mrs. Jones's summary judgment motion with the defense of internal exhaustion.[5] Though ERISA does not expressly require internal exhaustion, a body of federal common law has grown up in its shadow requiring just that. *Zhou v. Guardian Life Ins. Co. of America*, 295 F.3d 677, 679 (7th Cir.2002) (referring to internal exhaustion as a prerequisite for filing suit under ERISA); *Gallegos v. Mt. Sinai Medical Center*, 210 F.3d 803, 807–808 (7th Cir. 2000) (remarking that this requirement is not in the text of the statute). Requiring exhaustion reduces the number of frivolous claims, promotes nonadversarial dispute resolution, decreases the cost and time required for claim settlement, and creates a better record in the event judicial review is necessary. *Gallegos v. Mt. Sinai*, 210 F.3d at 808 (listing benefits). District courts, however, must exercise discretion when applying the exhaustion requirement and they may waive it under certain circumstances. *Id.* (remarking that district courts have the discretion to require, or not, exhaustion depending on the existence of exceptions, e.g., unavailability or futility). A defendant bears the burden of proving internal exhaustion by a preponderance of the evidence because it is an affirmative defense. *McCoy v. Board of Trustees of the Laborers' International Union, Local No. 222 Pension Plan*, 188 F.Supp.2d 461, 467–468 (D.N.J.2002) (finding that exhaustion under ERISA is an affirmative defense); *Bowden v. United States*, 106 F.3d 433, 437 (D.C.Cir.1997) (explaining in a different context that exhaustion is an affirmative defense and the therefore the defendant bears the burden of proving it).

Mrs. Jones responds that exhaustion was unnecessary for a variety of reasons: Mr. Jones was in an emergency situation; the plan suggests that appeals are permissive rather than mandatory; it would have been futile; and the plan did not issue a denial sufficient to trigger an administrative remedy. Alternatively, she says she exhausted her internal plan remedies through her representative, Partners' President Bruce Greenberg.

 One federal court of appeals has recognized an exigency exception to the internal exhaustion requirement "[i]n cases of rapid, life-threatening illnesses, patients seeking treatment are not required to exhaust contractual or administrative procedures before coming to federal court." *Henderson v. Bodine*, 70 F.3d 958, 962 (8th Cir.1995). Two factors counsel the court against following *Henderson*. First,

---

5. Mrs. Jones claims in a footnote in her reply brief in support of her motion for summary judgment that State Wide waived the administrative exhaustion argument because it did not include it in its response to her motion for summary judgment. Plaintiff's Reply in Support of Motion for Partial Summary Judgment (against State Wide) at 4 n. 1. That is incorrect. State Wide incorporated it by reference to its response to Partner's motion on the pleadings which included the administrative exhaustion argument. Brief of State Wide in Opposition to Plaintiff's Motion for Summary Judgment at 1 n. 1.

the *Henderson* decision provides no support for this exception and it stands as the only circuit court opinion recognizing such an exception. Second, while speed seems to have been the reason the *Henderson* court decided as it did, litigation is not necessarily a shorter path to payment than internal exhaustion. If the internal remedies suffice, resort to them will often be faster than federal courts with crowded dockets and time consuming procedural protections. State Wide Plan at 48 (attached as exhibit A to Plaintiffs' Motion for Partial Summary Judgment) (promising to send a written response to a participant's appeal within 60 days); U.S. District Courts–Median Time Interval From Filing to Disposition of Civil Cases, Report from the Administrative Office of the Courts[6] (visited January 24, 2003) (listing the average time for the disposition of a case in the Northern District of Indiana as 8.2 months)

██ The gist of Mrs. Jones's second argument is that the Plan's permissive language does not inform the average person that she must file an internal appeal so as not to lose the right to file suit in federal court. *Gallegos v. Mt. Sinai*, 210 F.3d at 810 ("We interpret an ERISA plan summary with its plain meaning as understood by an average person.") In *Gallegos*, the court found that "estoppel may be applied to preclude the assertion of failure to exhaust administrative remedies as a defense where the failure results from the claimant's reliance on written misrepresentations by the insurer or plan administrator." *Id.* Further, the court found that the plan had provided written misrepresentations to Ms. Gallegos, the plan participant, because it did not convey the interdependence of the administrative review mechanism and filing suit in federal court; rather than highlight this crucial link, the plan

merely spoke about internal review in permissive language as a co-equal option to filing suit. *Id* at 811. Misrepresentation alone, however, does not suspend exhaustion; the participant also must reasonably rely on these misrepresentations to her detriment. *Gallegos,* 210 F.3d at 811 (emphasizing this requirement). Ms. Gallegos lost because she didn't allege that she would have appealed in a timely fashion had she known about the exhaustion requirement.

Mrs. Jones can meet neither of *Gallegos'* prongs. The State Wide plan, unlike the plan in *Gallegos,* tells the participant that the ability to file suit depends on the exhaustion of internal review: "[l]egal action to recover any lost benefits under this Plan may not be brought ... until the Plan's appeal procedure ...has been exhausted." State Wide Plan at 29 (attached as exhibit A to Plaintiffs' Motion for Partial Summary Judgment). Further, like Ms. Gallegos, Mrs. Jones does not allege that she reasonably relied on the plan to her detriment (i.e., that she would have filed a timely appeal if not for the plan's allegedly permissive language).

██ Mrs. Jones's third argument posits futility. To prove that an appeal would be futile, Mrs. Jones must show "that it is certain that [the] claim will be denied on appeal, not merely that [she] doubts that an appeal will result in a different decision." *Zhou v. Guardian Life,* 295 F.3d at 680. She argues that "if the president of a major health insurance company [Partner's Bruce Greenberg] could not get NAA [the administrator of State Wide's plan] to change its decision, an average employee could not have hoped to do better." Plaintiffs' Response to State Wide's Motion for Summary Judgment at 12. So conclusory a statement does not trigger the futility

6. <http://www.uscourts.gov/caseload2002/ta- bles/c05mar02.pdf>

exception: "[w]hen a party has proffered no facts indicating that the review procedure that [she] initiated will not work, the futility exception does not apply." *Zhou,* 295 F.3d at 680.

■ Finally, Mrs. Jones argues that State Wide did not issue a denial sufficiently specific to trigger administrative exhaustion. ERISA itself provides little guidance as to the necessary substantive content of a denial letter; ERISA simply requires that the specific reasons be set forth in a manner comprehensible by the plan participant. 29 U.S.C. § 1133(1) (instructing the plan to "provide adequate notice in writing ...setting forth the specific reasons for [the] denial," and "written in a manner calculated to be understood by the participant"). Most of the substantive requirements come from regulations promulgated by the Secretary of Labor. Those regulations insist that each denial not only provide the specific reason for the denial, but also that it cite the pertinent plan provision, describe any information that the participant could provide to help perfect her claim and why it is helpful, and explain how to initiate review of a claim. 29 C.F.R. § 2560.503–1(f) (listing these requirements). A plan need only substantially comply with these regulations, it need not dot every "i" and cross every "t" if the omission does not compromise the fairness of the process. *Halpin v. W.W. Grainger, Inc.,* 962 F.2d 685, 690 (7th Cir. 1992) (noting that substantial compliance is sufficient).

State Wide provided Mr. Jones with a denial that substantially complied with these regulations. The notice easily cleared the first two of the Secretary's hurdles by giving a specific reason for the denial ("COVERED UNDER HMO PLAN") and referring Mr. Jones to page 26 of his plan. Explanation of Benefits, May 31, 2001 (attached as exhibit A to State Wide's Brief in Support of Summary Judgment and in Opposition to Judgment on the Pleadings). Nothing in the notice spelled out to Mr. Jones how he could perfect his claim (the Secretary's third must), but this appears to be a harmless omission since there was no procedural defect that could be cured. As to alerting Mr. Jones to the possibility of review, the notice stated quite visibly at the bottom that the participant may appeal the decision by "filing a written request for review." *Id.* While this notice is not the picture of clarity, it informs the participant of all the information that the statute and the Secretary deem necessary to ensure the fair administration of an ERISA qualified plan, at least in regards to denying a participant's claim.

■ Mrs. Jones further argues that she exhausted her internal remedies. She points to letters from Mr. Greenberg as examples of written requests for review in accord with the claims and appeals procedure laid out in page 48 of the plan. State Wide Plan at 48 (attached as exhibit A to Plaintiffs' Motion for Partial Summary Judgment) (laying out the procedure for internal review); Letters from Mr. Greenberg, President of Partners, to Mr. Daniel Dugan, President of North American Administrators, Ms. Patsy Grooms, Vice President of North American Administrators, and Ms. Johnson (Feb. 14, 2002; March 8, 2002; Feb. 8, 2002) (attached as exhibits A,C, and D, to plaintiffs' response to States Wide's Motion for Summary Judgment).

■ Mrs. Jones's appeals, if they were appeals,[7] were untimely. Mr. Greenberg

---

7. To be appeals, the content of the letters must be "reasonably calculated to alert the employer to the nature of the claim and request administrative review." *Powell v. AT &*

wrote his first letter on February 8, about eight months after the only claim denial letter before the court. Explanation of Benefits, May 31, 2001 (attached as exhibit A to State Wide's Brief in Support of Summary Judgment and in Opposition to Judgment on the Pleadings). This gap stretches far beyond the sixty-day window the plan provides. State Wide Plan at 48 (attached as exhibit A to Plaintiffs' Motion for Partial Summary Judgment) (giving the plan participant 60 days to register her appeal); 29 C.F.R. § 2560.503–1(g)(3) (allowing time limits on ERISA appeals of 60 days).

◼ No reasonable jury could disagree with State Wide that Mrs. Jones did not exhaust her internal remedies. The court may dismiss her claim with prejudice or without prejudice. *Lindemann v. Mobil Oil Corporation*, 79 F.3d 647, 651 (7th Cir.1996) (affirming a district court's decision granting summary judgment against a party for failing to exhaust rather than imposing a stay and allowing the plaintiff to exhaust her internal remedies); *Powell v. A T & T Communications, Inc.*, 938 F.2d 823, 825, 827 (7th Cir.1991). (upholding district court's grant of summary judgment).[8] In a case such as this, in which the law and the plan itself both served to put the claimant on notice that exhaustion of internal remedies was required, *D'Amico v. CBS*, 297 F.3d at 293 (finding no fault in dismissal with prejudice because plaintiff could have expected it based on existing law); State Wide Plan at 29 (attached as exhibit A to Plaintiffs' Motion for Partial Summary Judgment) (explaining the interdependence of internal exhaustion and filing a suit), and recognizing that even the letters from Mr. Greenberg did not begin until months after the time for internal appeal had elapsed, dismissal with prejudice is appropriate.

### The Escape Clause

◼ Partners' declaratory judgment counterclaim against State Wide asks the court to invalidate the escape clause through federal common law because, in Partners' view, the enforcement of such clauses would engender negative policy results. Partners' declaratory judgment action raises some knotty jurisdictional issues that require discussion because a federal court must satisfy itself of its own jurisdiction. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) ("Article III generally requires a federal court to satisfy itself of its jurisdiction before it considers the merits of a case.").[9]

---

*T Communications, Inc.*, 938 F.2d 823, 827 (7th Cir.1991). Given Mr. Greenberg's position as President of Partners, State Wide might have questioned whether these letters represented an appeal from an agent of Mr. Jones or the posturing of a rival unwilling to pay a claim. The court need not resolve this issue, since any appeal was untimely.

8. Although the Seventh Circuit is not alone in allowing dismissal with prejudice for failure to exhaust internal remedies, *see, e.g., D'Amico v. CBS Corp.*, 297 F.3d 287, 293 (3rd Cir. 2002) (upholding a district court's decision to dismiss with prejudice because the plaintiffs were aware of that possibility), not every circuit agrees. *Ravencraft v. Unum Life Insurance Company of America*, 212 F.3d 341, 344

(6th Cir.2000) (vacating the district court's judgment and remanding with instructions to dismiss the case without prejudice so that the plaintiff may attempt to exhaust her internal remedies); *Makar v. Health Care Corporation of the Mid–Atlantic*, 872 F.2d 80, 83 (4th Cir.1989) (same).

9. Further, consideration of the jurisdictional analysis is appropriate in light of *Winstead v. J.C. Penney*, 933 F.2d 576 (7th Cir.1991). In *Winstead v. J.C. Penney*, the court decided a jurisdictional issue, like this one, arising out of a suit between two interlocking ERISA plans. *Id.* Unlike this case, the plan initiating the action brought the case in the name of its trustees. *Id.* at 579. Though this fact was ultimately determinative, the court surveyed

■■■■ Jurisdiction in this case must arise, if at all, under 28 U.S.C. § 1331. Diversity jurisdiction is not available because ERISA's broad preemption provision eliminates the possibility that a plaintiff could sue under state law. 29 U.S.C. § 1144(a) (dictating that the statute, "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan"). Nor can jurisdiction for a suit between two plans be found in the text of ERISA. *Winstead v. J.C. Penney.* 933 F.2d 576, 581 (7th Cir.1991). That leaves § 1331. In dicta, the *Winstead* court wrote, "[g]iven ERISA's broad preemption provision, virtually every suit relating to an ERISA plan ... can be said to arise under federal law, and hence to be within the jurisdiction of the federal courts by virtue of section § 1331." *Id* at 579. Something relates to an employee benefit plan "if it has connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). This suit, about the enforceability of an escape clause, is connected to a plan, so the court has jurisdiction under § 1331.

■■■■ Partners filed a motion for judgment on the pleadings. When issuing a judgment on the pleadings, a court may only consider the complaint, the answer, and any written instruments attached as exhibits. *Northern Indiana Gun & Outdoor Shows v. City of South Bend,* 163 F.3d 449, 452 (7th Cir.1998) (determining the extent of the term "pleadings"). In this case, however, the court has considered arguments presented in other motions in addition to the pleadings, thereby converting the motion for a judgment on the pleadings to a motion for summary judgment. *Church v. General Motors Corp.,* 74 F.3d 795, 798 (7th Cir.1996) (reciting the proposition that the consideration of matters outside the pleadings converts a motion for judgment on the pleadings to a summary judgment motion).

■■■■ A court normally gives notice to the non-movant when it converts a motion for judgment on the pleadings to one for summary judgment. *Green v. Benden,* 281 F.3d 661, 665 (7th Cir.2002). In this case, though, Mrs. Jones moved for summary judgment on the escape clause issue using the same arguments that Partners used in its motion for judgment on the pleadings. See State Wide Aluminum's Brief in Opposition to Plaintiffs' Motion for Summary Judgment at 5 n. 4 ("Plaintiffs' argument on these points [regarding the escape clause] is a reiteration of the arguments raised in Partners' Brief in Support of Its Motion for Judgment on the Pleadings."). State Wide's only response to Mrs. Jones's argument was to incorporate its argu-

---

more generally the jurisdictional conundra raised in suits between two plans. *Id.* at 578–581. The court analyzed the possibility that Congress intended that federal common law claims between two plans should be litigable only in state court. *Id.* at 578. Because of ERISA's broad preemption clause, this would be a plaintiff's sole recourse if federal jurisdiction did not exist. 29 U.S.C. § 1144(a) (dictating that the statute, "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan"). The court deemed that scenario nonsensical: "[i]t makes more sense that [such] actions either are not litigable at all or,

better, that they too are litigable in federal court." *Id.* In other words, either there must be jurisdiction or the court should not recognize any claim at all. Using this interpretive framework, the court took one of the litigants to task for claiming that a federal court could not exercise original jurisdiction, but could exercise supplemental jurisdiction, over such a claim. *Id.* at 580. Under the *Winstead* court's view of congressional intent, supplemental jurisdiction only extends to claims, and if there is no original jurisdiction, then there is no claim. *Id.* In light of this opinion, the court found a simple invocation of supplemental jurisdiction wanting.

ments from its brief in response to Partners's motion for judgment on the pleadings. *Id.* ("Defendants request that their Brief in Response to Partners' Motion for Judgment on the Pleadings be incorporated into this brief and considered by the Court as if those arguments were fully set forth herein."). Since State Wide decided to use the same arguments and evidence to respond to a motion for judgment on the pleadings and a motion for summary judgment, a pause to allow supplementation with summary judgment materials would amount to nothing more than superfluous delay; State Wide already has had that opportunity. Because State Wide is not prejudiced by the court converting Partners's motion without notice, the court treats Partners' motion for judgment on the pleadings as one for summary judgment.

■■■■ The resulting cross-motions for summary judgment focus on a pure question, of law—the enforceability of the escape clause—which turns on federal common law, or the "federal rules of decision whose content cannot be traced by traditional methods of interpretation to federal statutory or constitutional commands." RICHARD H. FALLON ET AL., *Hart and Wechsler's The Federal Courts and The Federal System* 756 (4th ed.1996). Broadly speaking, there are two kinds of federal common law: that which is designed to protect uniquely federal interests (*e.g.,* the federal common law developed to protect federal interests in international relations), and that which is created to carry out congressional intent (*e.g.,* the federal common law created to fill in the gaps of various statutes). ERWIN CHEMERINSKY, *Federal Jurisdiction* 336 (1994). The federal common law surrounding ERISA is of the latter sort. Congress expected the courts to develop a "federal common law of rights and obligations un-

der ERISA plans." *Pilot Life Ins. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). This federal common law is limited to that necessary to effectuate the purposes of ERISA. *United McGill Corp. v. Stinnett,* 154 F.3d 168, 171 (4th Cir.1998) (reminding courts that this law making authority is limited to filling in or otherwise effectuating the statutory pattern); *Fox Valley & Vicinity Construction Workers Pension Fund v. Brown,* 897 F.2d 275, 281 (7th Cir.1990) (stating, "[i]n making [federal common law] rules, we must of course look to the statute itself for guidance").

Partners relies heavily on *McGurl v. Trucking Employees of North Jersey Welfare Fund, Inc.,* 124 F.3d 471 (3rd Cir. 1997), and *Northeast Dept. ILGWU Health and Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund,* 764 F.2d 147 (3rd Cir.1985), for the proposition that the court should make federal common law to invalidate the escape clause. Both cases fashioned common law to void escape clauses in ERISA qualified plans, *McGurl,* 124 F.3d at 476–477; *Northeast ILGWU Fund,* 764 F.2d at 159, 164. The cases also share the same logic (the earlier case lays it out and the latter simply follows it), which goes as follows. *Northeast ILGWU Fund,* 764 F.2d at 159–164 (building the argument); *McGurl,* 124 F.3d at 476–477 (adopting *Northeast*'s argument). Trustees are bound by a fiduciary duty to the plan participants, so their actions are judged on whether they are arbitrary or capricious. *Northeast ILGWU Fund,* 764 F.2d at 162–163. The trustee installed the escape clause, and by choosing to do, the trustee violated his fiduciary duty: an important policy undergirding ERISA is that the coverage that participants actually receive should match their expectations, and escape clauses upset the alignment between a participant's expectations and the plan's coverage. *Id.* at 163. The decision

to include an escape clause, therefore, is an arbitrary and capricious one, so escape clauses are unenforceable as a matter of federal common law. *Id.* at 159, 164.

Partners supplements these cases' logic with two related, but distinct, policy arguments that would militate against enforcing escape clauses. First, they say escape clauses unsettle not only the expectation of plan participants, but also the expectations of other plans, so such escape clauses would shift the economic burden to escape clause-free ERISA plans that had not anticipated such a burden. Other administrators, then, would incorporate escape clauses into their plans, and plan participants would see the benefits of dual coverage turn into the curse of dual coverage.

 Partners also sees a problem with HMO-specific escape clauses in Indiana plans. State law regulates HMOs, *Rush Prudential HMO, Inc. v. Moran,* 536 U.S. 355, 122 S.Ct. 2151, 153 L.Ed.2d 375 (2002) (concluding, "HMOs are almost universally regulated as insurers under state law"), and Indiana law, Partners reports, forbids HMOs from incorporating escape clauses into their plans. Indiana HMOs, then, could not avoid the economic burden that would befall them if other plans (governed by ERISA but not by Indiana law) proceeded with the rush to adopt escape clauses that Partners predicts. This, Partners concludes, would disrupt the Indiana insurance market by burdening Indiana HMOs unfairly and unexpectedly, causing HMO premiums to rise to cover the new risk and probable competitive disadvantage.

State Wide responds that the cases Partners cites incorrectly subject plan design decisions to fiduciary duty standards: as the plan's settlor, State Wide claims the right to delineate the plan's terms without the imposition of ERISA fiduciary standards. In short, State Wide says that plan administrators are not fiduciaries when they make design decisions. This assertion has a substantial foundation in case law. *See for example King v. National Human Resource Committee, Inc.,* 218 F.3d 719, 723 (7th Cir.2000) (reminding, "the defined functions of a fiduciary do not include plan design"); *Ames v. American National Can Company,* 170 F.3d 751, 757 (7th Cir.1999) (noting that ERISA fiduciaries do not wear their fiduciary hats when they make design decisions). The corollary of this argument—indeed, its foundation—is the notion that Congress did not intend for the courts to create common law dictating the substance of ERISA plans. *Hickey v. A.E. Staley,* 995 F.2d 1385, 1393 (7th Cir.1993) ("Congress never intended ERISA to dictate the *content* of welfare benefit plans, much less for the federal courts to determine the *content* of such plans.") (emphasis in the original).

Partners replies that while Congress may originally have intended for plan administrators to have virtually unfettered discretion to fill in the substance of their plan, more recent legislation indicates that some substantive regulation is desirable; since Congress enacted ERISA, it has passed the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) and the Health Insurance Portability and Accountability Act of 1996 (HIPAA), each of which restrict the content of ERISA qualified plans.

The court is not persuaded. Courts derive the power to fill in statutory blanks through federal common law from Congress, *Musick, Peeler & Garrett v. Employers Ins. of Wausau,* 508 U.S. 286, 291, 113 S.Ct. 2085, 124 L.Ed.2d 194 (1993), and Congress has not clearly authorized the courts to make federal common law regarding the substantive composition of ERISA plans. *See e.g. Hickey v. A.E. Staley,* 995 F.2d at 1393. The more recent

enactments of COBRA and HIPAA provide too little support too overcome the general rule, with a few Congressionally-created exceptions, of plan design freedom. Neither *King v. National Human Resource Committee,* 218 F.3d 719 (7th Cir. 2000), nor *Ames v. American National Can,* 170 F.3d 751 (7th Cir.1999)—both decided after enactment of COBRA and HIPAA—mentions either enactment as evidence of changing congressional intent toward substantive regulation. *See King,* 218 F.3d at 723 (citing prior case law for the well established conclusion that design decisions fall outside the purview of an administrator's fiduciary duty); *Ames,* 170 F.3d at 757 (same).

For the above reasons, the court finds that the escape clause is enforceable, grants State Wide's motion for summary judgment, and denies Partners' cross-motion for summary judgment. Partners' predictions about the ramifications of today's decision may be accurate, but those are matters for legislation, not a new direction of federal common law.

### Primary Payor

The last substantive motion left to decide is Mrs. Jones's motion for partial summary judgment against Partners. Mrs. Jones asks the court to decide that she is entitled to money from Partners whether Partners is the primary or secondary payor; Partners says it is only a secondarily liable. The court's decision on the enforceability of escape clause negates that response, something Partners openly concedes, "[i]f the Escape Clause is valid and enforceable ...[t]he Partners Plan would have primary coverage." Partners Brief in Support of Motion for Judgment on the Pleadings at 3. Since the court has decided that the escape clause was enforceable, Partners owes Mrs. Jones as the primary payor.

The court denies as moot both the motion for oral argument and the motion to defer judgment on Partners' cross claim until all pending motions are fully briefed.

### Conclusion

For all of the foregoing reasons, the court DENIES the plaintiff's motion for summary judgment against State Wide [Docket No. 90] and DISMISSES her suit against State Wide, DENIES Partners' motion for judgment on the pleadings on Count I of its cross-claim [Docket No. 74], GRANTS State Wide's motion for summary judgment on Count I of Partners' cross-claim [Docket No. 93], GRANTS the plaintiff's motion for summary judgment against Partners [Docket No. 89], and DENIES as moot the plaintiff's motion for oral argument [Docket No. 91] and the joint motion to defer ruling [Docket No. 84].

SO ORDERED.