Gloria WATTS, Plaintiff–Appellant,

v.

BELLSOUTH TELECOMMUNICATIONS, INC., Defendant–Appellee.

No. 02–13230.

United States Court of Appeals, Eleventh Circuit.

Jan. 3, 2003.

Kenneth Lee Cleveland, Cleveland & Cleveland, Birmingham, AL, for Plaintiff–Appellant.

James R. Glenister, BellSouth Corporation, Atlanta, GA, for Defendant–Appellee.

Before CARNES, HULL and ALARCON *, Circuit Judges.

CARNES, Circuit Judge:

We have held a number of times that a claimant's failure to exhaust the administrative remedies that an ERISA plan provides for challenging the denial of a benefits claim ordinarily bars her from pursuing that claim in court. *E.g., Counts v. Am. Gen. Life & Accident Ins. Co.,* 111 F.3d 105, 108 (11th Cir.1997). We have never decided the issue presented in this case, however, which is whether that bar should apply when the claimant's failure to exhaust her administrative remedies is the result of language in the summary plan description that she reasonably interpreted as meaning that she

could go straight to court with her claim. We conclude that the failure to exhaust bar should not apply in these circumstances, and for that reason we reverse the district court's grant of summary judgment against the claimant.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

### A. THE BELLSOUTH SHORT TERM DISABILITY PLAN

BellSouth Telecommunications, Inc., provides short term disability benefits to eligible employees through its BellSouth Short Term Disability Plan, and it has delegated to Kemper National Services, Inc., the exclusive discretionary authority to interpret and administer the terms of the Plan. (To simplify things we will refer to both corporations as "BellSouth.") The Plan sets up a two-tier claim and appeal procedure for participants who wish to make a disability claim. First, the plan participant must file a claim for benefits documenting the claimed disability. If that claim for benefits is denied, the Plan allows an appeal, providing:

> Any participant whose claim for Benefits has been denied in whole or in part and who wants this denial to be reviewed must submit a written appeal of the claim denial within 60 days after receipt of notice of denial.

In accordance with 29 U.S.C. §§ 1022 and 1024(b), BellSouth provided a "summary plan description" to plan participants and beneficiaries, including the plaintiff and appellant in this case, Gloria Watts, which contains an explanation of the terms of the Plan. ERISA requires employers to put certain information in the summary plan description, including "the procedures

---

* Honorable Arthur L. Alarcon, United States Circuit Judge for the Ninth Circuit, sitting by designation.

to be followed in presenting claims for benefits under the plan ... and the remedies available under the plan for the redress of claims which are denied in whole or in part." 29 U.S.C. § 1022(b). BellSouth complied with this requirement and described the Plan's claim and appeal procedure in the summary plan description.

The introductory paragraph to the "Benefit Claim And Appeal Procedures" section of the summary plan description states: "The procedure that must be followed in order to pursue your claim and appeal rights is described below." Under the heading "Appeal Procedure," the summary plan description states that "A claimant may use this procedure if: ... Written denial of the claim is received ... and the claimant wishes to appeal the denial." The appeal procedure is then described:

> If the claim for benefits is denied, or deemed denied, in whole or in part, and the claimant or a person duly authorized by the claimant wishes to appeal this denial, such appeal must be submitted in writing within 60 days after receipt of the denial.... Written request for review of any denied claim should be sent to the Secretary/Assistant Secretary, EBC, EBCRC or other Committee delegate....

To clarify, what we have been talking about thus far are the administrative remedies the Plan provides for participants and how those remedies are described in the summary plan description given to participants.

In addition to those administrative remedies, participants have at their disposal federal and state court remedies under ERISA, and those court remedies must also be described in the summary plan description. ERISA authorizes the Secretary of Labor to "require that the administrator of any employee benefit plan furnish to each participant and to each beneficiary receiving benefits under the plan a statement of the rights of participants and beneficiaries under this subchapter." 29 U.S.C. § 1024(c). One of those rights is to bring a lawsuit challenging the denial of benefits. 29 U.S.C. § 1132(a)(1)(B). The Secretary, implementing this statutory authority, has issued a regulation mandating that summary plan descriptions include a statement of the plan participants' legal rights under ERISA, and the regulation includes a model statement of rights which is recommended for use. See 29 C.F.R. § 2520.102–3(t). The pertinent language of the model statement provides that "[i]f you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court." Id. § 2520.102–3(t)(2). The summary plan description BellSouth provided to Watts and other participants contained a statement under the heading "Your Rights Under ERISA," which repeated verbatim the language of the model statement recommended by the Secretary in the regulation.

## B. WATTS' CLAIM AND ADMINISTRATIVE APPEAL

Gloria Watts, as a participant in the Plan, submitted a claim for disability benefits under it. On January 16, 2001, BellSouth notified Watts by letter that her claim had been denied. Watts timely filed what the parties call her first appeal, and BellSouth notified her by letter dated May 9, 2001, that it was denying her appeal and expressly informed her that she had 60 days to file a second and final administrative appeal.[1]

---

1. Although both the Plan and summary plan description provide for a two-tier claim and appeal procedure, it is apparently the practice of BellSouth to have an intermediate review which the parties call the "first appeal."

Counsel for both BellSouth and Watts represented at oral argument that BellSouth's practice is to have a Registered Nurse make the initial determination on a claim for benefits. If the claim is denied, then the claimant

Watts did not file the second and final administrative appeal. She consulted her union representative and was advised that it would not do any good, that she would not prevail in an administrative appeal. In an affidavit Watts filed in opposition to BellSouth's motion for summary judgment, she states that after consulting with the union representative, and while the 60 days for filing the second administrative appeal had not yet run, she consulted the summary plan description. She read in that document both the statement that she "may use [the administrative appeal] procedure" if a "claim for benefits is denied," and also the statement that "[i]f you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court." According to Watts' affidavit, she understood from the summary plan description that she had the option of continuing to pursue her claim administratively (by taking her second appeal), or filing a lawsuit, or both. As she described it, the summary plan description caused her to believe that she could do "either, both, or neither."

Because Watts was convinced she would not prevail administratively, she decided her best avenue for relief would be a federal lawsuit. She did not consult an attorney to discuss the possibility of a lawsuit until July 24, 2001, sixteen days after the deadline for filing her second administrative appeal had passed. On the same day that she met with her attorney, and presumably in compliance with legal advice, she sent a letter to BellSouth seeking to pick up and complete the administrative process by taking the second appeal from the denial of her claim for benefits. On August 1, 2001, BellSouth denied her second appeal because it, in the form of Watts' letter, had been filed seventy-six

days after the denial of her first appeal, which was sixteen days too late. Watts then filed this suit in the district court.

## C. PROCEDURAL HISTORY

Watts brought her complaint under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461, alleging that she was entitled to benefits under the Plan. After BellSouth filed a motion to dismiss based on Watts' failure to allege that she had exhausted her administrative remedies, Watts amended her complaint to specifically allege she had done so and that, even if she had not, the exhaustion requirement should be excused. After the parties consented to adjudication by a magistrate judge, he treated BellSouth's motion to dismiss as one for summary judgment and granted it against Watts because, by filing an untimely (by sixteen days) administrative appeal, she had failed to properly exhaust her administrative remedies.

## II. DISCUSSION

■ Ordinarily, if a plan participant failed to take advantage of an available administrative appeal by pursuing it in compliance with a reasonable filing deadline, she has failed to exhaust her administrative remedies and that bars federal court review of her claim. *See, e.g., Counts v. Am. Gen. Life & Accident Ins. Co.,* 111 F.3d 105, 108 (11th Cir.1997); *Gallegos v. Mt. Sinai Med. Ctr.,* 210 F.3d 803, 809–10 (7th Cir.2000); *Terry v. Bayer Corp.,* 145 F.3d 28, 40–41 (1st Cir.1998). Watts does not contend otherwise, nor does she contend that she met the deadline for filing her second administrative appeal. Instead, she argues that the district court should have estopped BellSouth from rais-

---

must take a "first appeal," which is really a review of the initial nurse's denial by a second Registered Nurse. What the parties call the "second appeal" is the appeal referred to in the Plan, and it is handled by a committee.

ing her failure to exhaust her administrative remedies, or in the alternative that her failure to exhaust those remedies should have been excused. We do not think that casting the argument in terms of estoppel is as helpful as examining the judge-made exhaustion defense in the context of the specific facts of this case.

■ The administrative exhaustion requirement is not found in the ERISA statute itself. Instead, it is a court-imposed, policy-based requirement first recognized by this Circuit in *Mason v. Continental Group, Inc.*, 763 F.2d 1219, 1226–27 (11th Cir.1985). We created the administrative exhaustion requirement, and we are still in the process of shaping it insofar as new factual scenarios are concerned. *See generally HCA Health Serv. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 992 (11th Cir.2001); *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1311, 1315–18 (11th Cir.2000); *Counts*, 111 F.3d at 108–09; *Variety Children's Hosp., Inc. v. Century Med. Health Plan, Inc.*, 57 F.3d 1040, 1042 (11th Cir.1995); *Byrd v. MacPapers, Inc.*, 961 F.2d 157, 160–61 (11th Cir.1992); *Harrison v. United Mine Workers of Am.1974 Benefit Plan & Trust*, 941 F.2d 1190, 1193 (11th Cir.1991); *Springer v. Wal–Mart Assocs. Group Health Plan*, 908 F.2d 897, 901 (11th Cir.1990); *Curry v. Contract Fabricators Inc. Profit Sharing Plan*, 891 F.2d 842, 846–47 (11th Cir.1990), *abrogated on other grounds by Murphy v. Reliance Standard Life Ins. Co.*, 247 F.3d 1313, 1314 (11th Cir.2001); *Merritt v. Confederation Life Ins. Co.*, 881 F.2d 1034, 1035 (11th Cir.1989); *Mason*, 763 F.2d at 1226–27.

The facts of those cases, the ones in which we have applied or declined to apply our ERISA exhaustion requirement, necessarily shape the parameters of that requirement. Whatever their opinions say, judicial decisions cannot make law beyond the facts of the cases in which those decisions are announced. *See, e.g., Glazner v. Glazner,* No. 02–11799 (11th Cir. Dec. 31, 2002) ("The holdings of a prior decision can reach only as far as the facts and circumstances presented to the court in the case which produced that decision.") (quoting *United States v. Aguillard,* 217 F.3d 1319, 1321 (11th Cir.2000)). We have no circuit law that controls the facts of this case, because we have not yet decided an ERISA case in which the plan participant's failure to exhaust administrative remedies was caused by her reasonable interpretation of the summary plan description to mean that exhaustion was not necessary.

Our answer to that issue is this: The claim ought not to be barred by the doctrine of exhaustion if the reason the claimant failed to exhaust is that she reasonably believed, based upon what the summary plan description said, that she was not required to exhaust her administrative remedies before filing a lawsuit. Watts' affidavit, which must be taken as true for summary judgment purposes, establishes that the reason she did not complete her administrative remedies is that the summary plan description caused her to believe exhaustion of administrative remedies was not necessary to pursuing her claim in court. The fact that Watts attempted to pursue those administrative remedies to completion the very same day she consulted with an attorney corroborates the thrust of her affidavit, which is that but for a misunderstanding engendered by the summary plan description, Watts would have timely pursued those remedies before going to court.

But was Watts' interpretation of the summary plan description reasonable? The reasonableness of it must be judged from the perspective of the average plan participant. *See* 29 U.S.C. § 1022(a) ("The summary plan description ... shall be

written in a manner calculated to be understood by the average plan participant."); *cf. Lee v. Blue Cross/Blue Shield of Ala.*, 10 F.3d 1547, 1551 (11th Cir.1994); (ambiguities in the summary plan description and plan construed against the drafter); *Bergt v. Ret. Plan for Pilots Employed by Markair, Inc.*, 293 F.3d 1139, 1145–46 (9th Cir.2002) (same); *Hansen v. Cont'l Ins. Co.*, 940 F.2d 971, 982 (5th Cir.1991) (same). Reading the summary plan description with that perspective in mind, we think Watts' interpretation of it as permitting her to sue even if she did not exhaust her administrative appeal remedies is reasonable.

We read the administrative appeal and lawsuit disclosure parts of the summary plan description in concert because that is the nature of the question and it is how the average plan participant would read them. The summary plan description tells participants that they "may use" the administrative appeal procedure if their claim is denied and they "wish to appeal" and, on the very next page, states that claimants "may" file a suit in federal court if their claim is denied. In neither place, or anywhere else in the document, does it say that using the administrative appeal procedure is necessary before a lawsuit may be filed. By describing without limitation either route as one the participant "may" use to obtain relief from the denial of her claim, the clear implication is that neither is a prerequisite for the other. To attorneys and judges familiar with the law in general and with ERISA law in particular, it may seem obvious that administrative remedies must come before a lawsuit, but to the average plan participant, who by virtue of being an ERISA claimant will sometimes be sick or disabled, there is nothing obvious about it. Instead, it is more likely that a layperson told that she "may" exhaust her administrative remedies and that she "may" file a lawsuit would conclude, as Watts did, that it was an either/or proposition—her option.[2]

Faced with a summary plan description which described the available administrative remedies in language nearly identical to that in the summary plan description before us, and which also adopted verbatim the Secretary of Labor's recommended statement of the right to a lawsuit under ERISA, the Seventh Circuit reached the same conclusion we do:

> [T]he use of phrases such as "you may have [your claim] reviewed," "should you desire a review," "if you ... wish to have the decision reviewed," and "you ... may appeal," given their plain meaning, indicate that a plan participant has the opportunity to participate in a voluntary, rather than mandatory, review procedure.

*Gallegos v. Mt. Sinai Med. Ctr.,* ·210 F.3d 803, 810 (7th Cir.2000).

In reaching that conclusion in *Gallegos,* however, the Seventh Circuit failed to discuss the fact that the summary plan description language describing the partici-

---

**2.** This is a simple drafting problem to remedy. *See, e.g., Springer,* 908 F.2d at 900 (citing to a summary plan description containing the statement "No action at Law or in Equity shall be brought to recover under this PLAN document until the appeal rights herein provided have been exercised and the PLAN benefits requested in such appeal have been denied in whole or in part.").

We do not mean to imply that the reasonableness of a claimant's interpretation is to be judged solely by the contents of the summary plan description. It may well be that interpreting the document as Watts did would not have been reasonable if the letter announcing the denial of her claim had informed her that she had to exhaust all of her administrative remedies before she could file a lawsuit. We do not have that question before us, because the denial letter Watts received did not contain that information.

pant's lawsuit option in that case (as in this one) was taken verbatim from a model statement recommended to employers and plan administrators by the Secretary of Labor. We have already discussed the existence of that model statement and the regulation from which it is drawn earlier in this opinion. The language lifted from the model statement and used in the summary plan description does state that: "If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court." That officially blessed statement is one-half of the whole of two parts that we have concluded could be reasonably interpreted by the average plan participant to give her the option of suing without exhausting administrative remedies.

One half, however, does not a whole make. The other half of the picture is the failure of the summary plan description's discussion of the administrative remedies to disclose that pursuing those remedies is necessary before the claim can be taken to court. And that part of the summary plan description, unlike the part describing court remedies, is not based upon any model statement recommended by the Secretary of Labor. Nor has the Secretary purported to rule out the possibility that use of the model statement combined with other statements in a summary plan description might cause an employer or plan administrator to lose the use of the exhaustion defense. We are not sure that the Secretary could do that, anyway. The Secretary of Labor is not the master of the doctrine that administrative remedies must be exhausted before an ERISA claim can be pursued in court. It is our doctrine, and we think it ought not to be applied to bar adjudication of claims in cases where the summary plan description led the claimant reasonably to conclude that exhaustion was not necessary.

Refusing to apply the exhaustion doctrine in these circumstances—call it an exception to the doctrine if you wish—will help promote the important purposes served by the doctrine. We have previously summarized the policy reasons underlying the exhaustion requirement as including: "helping to reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned." *Curry*, 891 F.2d at 846 (citations and internal marks omitted). The more claimants are aware of the need to use administrative remedies before resorting to lawsuits, the more the purposes of the exhaustion doctrine will be served. And our decision today will help ensure that employers and plan administrators take steps to clarify language that may cause claimants not to exhaust their administrative remedies. More clarity. Better informed claimants. More exhaustion of administrative remedies.

In the *Gallegos* case, the Seventh Circuit reached essentially the same rule we do, albeit in dicta because the claimant in that case had not relied upon the erroneous impression she got from the summary plan description language. 210 F.3d at 810–11. It draped the rule in the fabric of estoppel, saying that the summary plan description statements were "misleading" and constituted a "misrepresentation" sufficient to justify application of an estoppel bar to assertion of the exhaustion bar. *Id.* We choose not to cast the matter in the terms of misrepresentation or to attempt to justify our conclusion as consistent with principles of estoppel. The former is too pejorative and the latter is unnecessary. It seems plainer and more straightforward to simply say, as we do, that our doctrine of exhaustion of administrative remedies in ERISA cases includes this rule: If a plan

claimant reasonably interprets the relevant statements in the summary plan description as permitting her to file a lawsuit without exhausting her administrative remedies, and as a result she fails to exhaust those remedies, she is not barred by the court-made exhaustion requirement from pursuing her claim in court.

Summary judgment should not have been granted against Watts for failure to exhaust administrative remedies.

REVERSED and REMANDED.