Morgan BOJORQUEZ, Plaintiff,

v.

E.F. JOHNSON COMPANY, as Employer and as Administrator of the Group Long Term Disability Plan for E.F. Johnson Company, and Unum Life Insurance Company of America, as Fiduciary of the Group Long Term Disability Plan for E.F. Johnson Company, Defendants.

No. 03–22576–CIV–KING.

United States District Court, S.D. Florida, Miami Division.

April 30, 2004.

David E. Robinson, Sugarman & Susskind, P.A., Coral Gables, FL, Counsel for Plaintiff.

Joseph Mark Goldstein, Temple Fett Kearns, Shutts & Bowen, Fort Lauderdale, FL, Kristina B. Pett, Furman & Jacobson PL, Boca Raton, FL, Counsel for Defendant.

## *ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT UNUM ON COUNT II AND GRANTING DEFENDANT UNUM'S MOTION FOR SUMMARY JUDGMENT ON COUNT II*

JAMES LAWRENCE KING, District Judge.

THIS CAUSE is before the Court upon Plaintiff's Motion for Summary Judgment

against Defendant Unum on Count II, filed March 8, 2004,[1] and Defendant Unum Life Insurance Company of America's ("Unum's") Motion for Summary Judgment on Count II, filed the same day.[2]

## BACKGROUND

The following facts are undisputed: Plaintiff was employed by Defendant E.F. Johnson Company ("E.F.Johnson") from September of 1997 through August of 1999. During Plaintiff's tenure, E.F. Johnson maintained a disability insurance policy issued by Defendant Unum. The policy was an employee welfare benefit plan as defined by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and Unum served as a fiduciary under the policy, within the meaning of 29 U.S.C. § 1002(21).

In February of 1999, Plaintiff was diagnosed with Hodgkin's Lymphoma, a form of cancer. In the summer of 1999, Plaintiff applied for Short Term Disability Benefits on the basis of his disability caused by the cancer. Unum approved Plaintiff's application in August of 1999. In February of 2000, Plaintiff applied for Long Term Disability Benefits on the basis of the same disability. Unum approved Plaintiff's application in February of 2000. However, by letter dated February 12, 2001, Unum terminated Plaintiff's Long Term Disability Benefits. The letter read as follows:

> Dear Mr. Bojorquez:
> This letter is in regard to your Long Term Disability claim. We have completed a review of your claim and have made a final determination regarding your benefit eligibility. We are unable to approve your claim for continued benefits.
> According to the policy under which you are covered:
> You are disabled when UNUM determines that:
> * you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and
> * you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.[3]
> We recently requested an Insured's Supplemental Statement and Estimated Functional Abilities Form which included current medical records. We then referred your file to our vocational staff for an occupational clarification. It was determined that your occupation as a Director of Sales is classified as a sedentary occupation. Dr. Noy has listed on the Estimated Functional Abilities Form that you are capable of 8 hours of sedentary activity in your occupation. He also stated on the Supplemental Form that your treatment for the Hodgkin's Lymphoma has ended and you are currently in remission. Based on the review of these forms and medical records, it does not appear that you have loss of functional capacity due to your diagnosis of Hodgkin's Lymphoma.
> Based on this information, you are no longer disabled from your occupation and, therefore, we must deny further liability on your claim.
> If you have new, additional information to support your request for disability

---

**1.** On March 25, 2004, Defendant Unum filed its Response. On April 5, 2004, Plaintiff filed his Reply.

**2.** On March 25, 2004, Plaintiff filed his Response. On April 13, 2004, Defendant Unum filed its Reply.

**3.** This language is a direct excerpt from the section of Unum's policy that pertains to Long Term Disability (Decl. of Darragh Ferranti, Ex. A).

benefits, please send it to my attention at the address noted on this letterhead.

If you intend to appeal this claim decision, you must submit your written appeal, including any new information, within 90 days of the date of this letter to the following address:

.     .     .     .     .

If UNUM Provident does not receive your written appeal within 90 days of the date of this letter, our claim decision will be final. If the information we receive does not enable us to alter our determination, we will forward your file for an independent, impartial and final appeal review.

I understand you may have questions concerning our denial of your disability claim. Please feel free to contact me at 1–800–858–6843, x57045 to discuss this matter further.

Sincerely,

Linda Mooers

Customer Care Specialist

(Pl.'s Mot., Ex. B).

Ninety days elapsed from February 12, 2001 to May 13, 2001. Plaintiff never requested an extension of time in which to file an appeal. On May 23, 2001, ten days after the ninety day deadline expired, Plaintiff mailed an appeal of Unum's decision. Plaintiff's letter stated that Plaintiff appealed the decision and that additional information would arrive under separate cover. Unum received the appeal on May 30, 2001. Unum refused to hear Plaintiff's appeal on the grounds that Plaintiff's appeal was untimely.

On August 27, 2003, Plaintiff filed his Complaint in the Circuit Court of the Eleventh Judicial Circuit in and for Miami–Dade County, Florida. On October 2, 2003, Defendant Unum Life Insurance Company of America ("Unum") removed the case to this Court, based on federal question jurisdiction under ERISA. On January 23, 2004, Plaintiff filed his Amended Complaint, which contains two Counts. Count I alleges that E.F. Johnson breached Plaintiff's compensation agreement.[4] Count II alleges wrongful termination of disability benefits on the part of both Defendants, in violation of ERISA.[5]

In its current Motion, Unum argues that Plaintiff failed to meet ERISA's requirement that he exhaust his administrative remedies prior to filing this suit when he failed to submit a timely appeal of Unum's decision to terminate his benefits. Unum further argues that its February 12, 2001 letter to Plaintiff was in substantial compliance with ERISA's notice requirements and thus satisfied Unum's statutory obligations under ERISA. In his current Motion, Plaintiff argues that Unum was not entitled to enforce its ninety day appeal deadline against Plaintiff because Unum's February 12, 2001 letter to Plaintiff failed to comply with ERISA's notice requirements.[6] In his Response to Unum's Motion, Plaintiff further argues that the Court should excuse Plaintiff from ERISA's requirement that he exhaust his

---

**4.** On April 29, 2004, the Court entered its Order Remanding Count I of Plaintiff's Complaint for Lack of Subject Matter Jurisdiction. Therefore, Count II is the sole remaining Count before this Court.

**5.** On April 15, 2004, Plaintiff filed a Stipulation of Voluntary Dismissal, in which Plaintiff acknowledged that E.F. Johnson did not serve as a fiduciary under ERISA and dismissed

Defendant E.F. Johnson from Count II of the Complaint.

**6.** In their respective Motions, both parties also addressed the merits of Unum's decision to terminate Plaintiff's Long Term Disability Benefits. However, for reasons that follow, this Order does not reach the merits of Defendant's decision.

administrative remedies because the language in Unum's plan provisions was misleading with regard to the exhaustion requirement.[7]

## LEGAL STANDARD

Summary judgment is appropriate only where it is shown that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the record as a whole could not lead a rational fact-finder to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On a motion for summary judgment, the court must view the evidence and resolve all inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the burden of pointing to that part of the record which shows the absence of a genuine issue of material fact. *Hairston v. Gainesville Sun Pub. Co.,* 9 F.3d 913, 918 (11th Cir. 1993). If the movant meets its burden, the burden then shifts to the non-moving party to establish that a genuine dispute of material fact exists. *Id.* To meet this burden, the non-moving party must go beyond the pleadings and "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Chanel, Inc. v. Italian Activewear of Florida, Inc.,* 931 F.2d 1472, 1477 (11th Cir.1991). If the evidence relied on is such that a reasonable jury could return a verdict in

favor of the non-moving party, then the court should refuse to grant summary judgment. *Hairston,* 9 F.3d at 919. A mere scintilla of evidence in support of the non-moving party's position is insufficient, however, to defeat a motion for summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. If the evidence is merely colorable or is not significantly probative, summary judgment is proper. *Id.* at 249–50, 106 S.Ct. 2505.

## DISCUSSION

■ Before a benefit plan participant may sue in federal court for the alleged wrongful denial of benefits under ERISA, he first must exhaust all available administrative remedies in the plan's claims process. *Counts v. American General Life & Accident Ins. Co.,* 111 F.3d 105, 108 (11th Cir.1997); *Springer v. Wal–Mart Associates' Group Health Plan,* 908 F.2d 897, 899 (11th Cir.1990); *Mason v. Continental Group, Inc.,* 763 F.2d 1219, 1226–27 (11th Cir.1985). However, as noted below, under certain circumstances, a claimant who fails to exhaust all administrative remedies may nonetheless seek relief in federal court.

### A. *Failure to Substantially Comply with ERISA's Notice Requirements*

ERISA requires a plan that denies a claim for benefits to provide written notice to the claimant that sets forth certain information in a manner that the claimant can understand. 29 U.S.C. § 1133. Notice must include the following information:

"(1) the specific reason or reasons for the denial;

---

7. Plaintiff also argues that Unum may not enforce its ninety day deadline because Unum cannot establish the date upon which it sent its February 12, 2001 letter to Plaintiff. However, Unum's letter clearly states that Plaintiff must appeal within ninety days of the date of the letter, not the date on which the letter was mailed. Accordingly, Plaintiff's argument is without merit.

(2) specific reference to pertinent plan provisions on which the denial is based; (3) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and

(4) appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review".

29 C.F.R. 2560.503–1(f).

■ If a plan fails to meet these notice requirements, then a claimant is not bound by the plan's deadline for administrative appeals. *Counts*, 111 F.3d at 108. Under such circumstances, a claimant may seek a federal court order requiring the plan to hear an out-of-time appeal. *Id.*

■ However, the Eleventh Circuit requires only substantial compliance, as opposed to strict compliance, with ERISA's notice provisions. *Id.* The purpose of these regulatory requirements is to provide the claimant "with a statement of reasons that, under the circumstances of the case, permit a sufficiently clear understanding of the administrator's position to permit effective review." *Id.* (quoting *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 690 (7th Cir.1992)). Therefore, substantial compliance exists when an insurance company's written communication to a claimant satisfies this purpose. *Id.* Consequently, pursuant to the third regulatory requirement listed above, an insurance company does not have to tell a claimant what information he will need to provide in order to "win" his appeal; rather, substantial compliance exists where the claimant understands what additional materials to provide in order for the appeals process to prove effective. *Terry v. Bayer Corp.*, 145 F.3d 28, 32 (1st Cir.1998).

■ Plaintiff argues that Unum's February 12, 2001 letter failed to comply with two of ERISA's notice requirements.

First, Plaintiff argues that the letter failed to make specific reference to the plan provision upon which Unum based its decision. Plaintiff acknowledges that the letter contained a direct excerpt of the policy provision upon which Unum relied, but Plaintiff argues that Unum was required to cite the section of the policy in which this excerpt appeared. The Court finds that Plaintiff's argument lacks merit. The letter's inclusion of the precise language that served as the basis of Unum's decision pinpointed the issues Plaintiff would have to address on appeal. The provision contained the policy's definition of disability, and Plaintiff should have understood that in order to effectively pursue an appeal, he would have to show that his disability fit the terms of that definition. Therefore, Unum substantially complied with the requirement to make specific reference to the plan provision upon which it based its decision.

■ Plaintiff next argues that the letter failed to describe the additional information necessary in order for Plaintiff to "perfect" his claim. Plaintiff argues that it was insufficient for Unum's letter merely to state, "If you have new, additional information to support your request for disability benefits, please send it to my attention at the address noted on this letterhead." While it is true that the letter did not explicitly list the additional information Plaintiff could provide, the letter clearly set forth the reasoning behind Unum's decision. First, as discussed above, the letter informed Plaintiff that the basis for Unum's termination of Plaintiff's benefits was the policy's definition of disability, which required a claimant to be "limited from performing the material and substantial duties of [his] regular occupation." Next, the letter added that Unum had reviewed Plaintiff's current medical records. The letter then added that Plain-

tiff's doctor had determined that Plaintiff was capable of eight hours of sedentary work each day. Since Unum had determined that Plaintiff's occupation was a sedentary occupation, the letter concluded that Plaintiff was capable of performing the material and substantial duties of his job, and therefore Plaintiff was not entitled to disability benefits. The letter further added that Plaintiff's cancer was in remission and that his treatment had ended.

Unum's letter informed Plaintiff of the exact nature of the information Plaintiff could provide for effective review. Since Unum had concluded that Plaintiff no longer had a disability under the policy's definition of the term, Plaintiff should have known to produce any additional medical records that would have shown that he did in fact continue to suffer from such a disability. More specifically, Plaintiff also should have known to produce any evidence that his occupation was not in fact sedentary, that he was not capable of eight hours of sedentary work each day, or that he continued to receive treatment for his cancer.

Instead, Plaintiff asserts that he suffered from various secondary conditions related to his cancer, including fibromyalgia, depression, and chronic fatigue syndrome. Plaintiff argues that because the letter did not address these conditions, Plaintiff was not put on notice that additional evidence pertaining to these conditions would have enabled him to "perfect" his appeal. However, Plaintiff's argument concedes that these secondary conditions were related to his cancer and contributed to his disability. Unum's letter informed Plaintiff that any additional information pertaining to his disability would enable him to "perfect" his claim on appeal. Since these secondary conditions related to his disability, Plaintiff should have known that any information relating to these conditions would have provided for effective review of Unum's decision. Moreover, the fact that Unum failed to address these conditions in its letter suggested that Unum had failed to take them into account when reaching its decision. This failure should have made it *more* clear, rather than less clear, to Plaintiff that additional information pertaining to these conditions would prove useful on appeal. Therefore, the Court finds that Unum's February 12, 2001 letter substantially complied with the requirement that it describe the additional information necessary in order for Plaintiff to perfect his claim on appeal.[8]

### B. *Ambiguous Plan Provisions*

██ A claimant who fails to exhaust all administrative remedies may also seek relief in federal court if his plan's policy provisions are ambiguous as to the exhaustion requirement. *Watts v. BellSouth Telecommunications, Inc.,* 316 F.3d 1203, 1204 (11th Cir.2003). In *Watts,* the plan's summary plan description ("SPD") stated that claimants had the right to an administrative appeal regarding the denial of benefits. *Id.* at 1205. A separate provision of the SPD added that claimants whose benefits were denied had the right to sue in

---

**8.** Moreover, Plaintiff has not asserted that he filed his appeal past the deadline *because* he did not understand what additional information he needed to include in his appeal. In fact, the appeal Plaintiff mailed on May 23, 2001 merely stated that Plaintiff appealed Unum's decision to terminate his benefits and would provide additional information under separate cover. If Plaintiff truly did not understand what additional information to provide, he could have mailed the same letter in a timely manner and asked Unum to describe more thoroughly the nature of the materials he should provide. Plaintiff's actions strongly suggest that there was no relationship between the issue of Defendant's compliance with ERISA's notice requirements and Plaintiff's failure to appeal in a timely manner.

federal court. *Id.* Significantly, the SPD did not state that exhaustion of administrative remedies was a necessary pre-requisite to the right to sue. *Id.* at 1206. After reading these provisions, the plaintiff determined that she did not have to exhaust her administrative remedies prior to filing suit in federal court. *Id.* She first consulted an attorney after the deadline for filing an administrative appeal had expired, and though she filed an administrative appeal upon her attorney's advice, the plan refused to hear the appeal because it was untimely. *Id.* The court held that having read both relevant provisions in the SPD, the plaintiff reasonably interpreted her SPD to mean that she could sue in federal court without first resorting to an administrative appeal. *Id.* at 1207–08. The court added that the "right to sue" clause did not have to include the exhaustion requirement, but the exhaustion requirement had to appear somewhere in the SPD in order for a claimant to understand the requirement. *Id.* at 1209. Therefore, the court waived the requirement that the claimant exhaust her administrative remedies prior to filing suit and remanded the case to the district court. *Id.* at 1204.

In the instant case, Plaintiff alleges that after he received Unum's February 12, 2001 letter,

> "I consulted my certificate of coverage to determine my rights. I read a section titled, 'What are the time limits for legal proceedings,' which stated, 'You can start legal action regarding your claim 60 days after proof of claim has been given and up to 3 years from the time proof of claim is required, unless otherwise provided under federal law.' I interpreted that to mean that I could commence a lawsuit upon the expiration

of 60 days, without having to exhaust any administrative remedies."

(Pl.'s Second Aff. at ¶ 3). Plaintiff adds that in May of 2001, he consulted with an attorney, who advised him "to exhaust administrative remedies prior to commencing a lawsuit." (Pl.'s Second Aff. at ¶ 4).

Despite Plaintiff's assertions, this case differs from *Watts* in three fundamental ways. First, Plaintiff failed to raise this argument in either his Complaint, his Amended Complaint, or his Motion for Summary Judgment. Plaintiff first raised this argument in his Response to Defendant's Motion. In fact, Plaintiff's Amended Complaint states that, "Plaintiff has made all appropriate and reasonable attempts to exhaust his administrative remedies under the plan, but Defendants have refused to permit Plaintiff to do so." (Pl.'s Am. Compl. at ¶ 31). This statement acknowledges that Plaintiff was required to exhaust his administrative remedies prior to filing suit and casts doubt upon Plaintiff's recent assertion that he was not aware of the exhaustion requirement and should be excused from it.

Second, as noted above, essential to the holding in *Watts* was the fact that multiple provisions of the plan at issue, when read *in conjunction with one another,* failed to establish the exhaustion requirement. 316 F.3d at 1207–08. The court held that standing alone, the "right to sue" provision in the SPD did not warrant exemption from exhaustion requirement. *Id.* at 1209.[9] However, in his affidavit, Plaintiff merely asserts that he read the single provision of his plan that permitted him to file suit in federal court. Significantly, Plaintiff fails to assert that he read any provisions pertaining to administrative ap-

---

9. In fact, the *Watts* court could not have held that the language of the plan's "right to sue" provision could by itself warrant exemption from the exhaustion requirement. The court acknowledged that the provision at issue had been taken verbatim from a model statement recommended by the Secretary of Labor. *Id.* at 1209.

peals that failed to establish the exhaustion requirement. Instead, Plaintiff has admitted that he read a provision which expressly stated that no legal action may be brought until a claimant has exhausted all appeals. (Pl.'s Dep. at 35).[10] Therefore, unlike the plaintiff in *Watts,* Plaintiff had notice of the exhaustion requirement.

Third, the plaintiff in *Watts* did not consult an attorney until after the deadline for appeal had expired, at which point it was impossible to exhaust her administrative remedies in a timely manner. 316 F.3d at 1206. Conversely, in this case, Plaintiff admits that he consulted an attorney during the first week of May, at which point there was still time for Plaintiff to file an appeal, or at the very least request an extension of time in which to do so. (Pl.'s Dep. at 33). However, Plaintiff failed to pursue either of these options and instead filed an untimely appeal. Therefore, the Court finds that this case is not analogous to *Watts,* and Plaintiff is not excused from the exhaustion requirement on account of the language contained in Unum's plan documents.

In conclusion, the Court finds that Plaintiff has failed to justify or excuse his failure to exhaust his administrative remedies prior to filing this suit, and summary judgment must be granted in favor of Defendant.

Accordingly, after a careful review of the record and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Plaintiff's Motion for Summary Judgment against Defendant Unum on Count II be, and the same is hereby, DENIED. It is further

ORDERED and ADJUDGED that Defendant Unum's Motion for Summary Judgment on Count II be, and the same is hereby, GRANTED.

---

**10.** The provision at issue appears on page 21 of Plaintiff's Group Long Term Disability Insurance Certificate, which Plaintiff attached to his Amended Complaint. The provisions reads, in pertinent part, "no action at law or in equity may be brought until 60 days after you have given us Proof of Loss *and have exhausted all appeals.*" (emphasis added).