Warren KELLER, Plaintiff,

v.

ALBERTSONS, INC. EMPLOYEES' DISABILITY BENEFITS PLAN, Defendants.

No. CV 07–06406 SJO (RCx).

United States District Court, C.D. California.

Dec. 15, 2008.

---

Lisa S. Kantor, Kantor and Kantor, Northridge, CA, Robert F. Keehn, Robert F. Keehn Law Office, Los Angeles, CA, for Plaintiff.

Robert R. Pohls, Pohls and Associates, San Ramon, CA, W. Mark Gavre, Parsons Behle and Latimer, Salt Lake City, UT, for Defendants.

## ORDER AND JUDGMENT

S. JAMES OTERO, District Judge.

The instant case arises under the Employee Retirement Income Security Act of 1974 ("ERISA"). The Court found this matter suitable for disposition without oral argument and vacated the trial date set for October 22, 2008. *See Kearney v. Standard Ins. Co.,* 175 F.3d 1084, 1094–95 (9th Cir.1999). For the following reasons, the Court enters judgment in Keller's favor.

### I. *BACKGROUND*

Plaintiff Warren Keller worked for Albertsons, Inc. as a Loss Prevention Manager from 1990 until 2003, when he stopped work due to various injuries and health conditions including hypertension, cardiac arrhythmia, lumbar degenerative joint disease, a knee meniscal repair, and a torn shoulder rotator cuff. (Administrative Record ("AR") 12, 153.) Keller received benefits under Defendant Albertsons Inc. Employees' Disability Plan (the "Plan"), but after two years his benefits were terminated. (AR 1.)

The Plan provides long-term disability benefits to Albertsons employees who suffer from a total disability, defined by the Plan as "the complete inability of the Employee to perform any and every duty of his or her regular occupation with the Employer." (AR 208.) This "own occupation" definition of total disability applies during the first 24 months an employee receives Plan benefits. (AR 208.) After 24 months, the "any occupation" definition applies, which defines total disability as "the complete inability of the Employee to perform any and every duty of gainful occupation for which he or she is reasonably fitted by training, education, or experience...." (AR 208.) "Whether or not Total Disability exists shall be determined by the Plan Administrator in its sole and absolute discretion." (AR 208.)

After Keller stopped working, he received salary continuation benefits from November 26, 2003 to February 24, 2004. (AR 139.) Keller then received two years of Plan benefits from February 25, 2004 to February 24, 2006, under the "own occupation" definition of "total disability."[1] (AR 41.) In April 2006 the Plan informed Keller he could apply to receive Plan benefits beyond the 24 month "own occupation" period by submitting two medical information forms filled out by two unaffiliated physicians, and that the more stringent "any occupation" definition of total disability would apply. (AR 38.) At first Keller told the Plan he was unsure whether he would apply for "any occupation" benefits because he could not afford to go to two doctors. (AR 5.) On July 19, 2006 Keller wrote to the Plan to "confirm that [he did] want to proceed with continuing [his] long-term care disability" (AR 18) and submitted the forms filled out by three physicians. (AR 11.) The physicians stated Keller could do sedentary work so long as it did not involve stress, repetitive lifting above shoulder level or more than occasional lifting greater than 10–15 pounds. (AR 13–26.) Two of the three physicians stated Keller could stand, walk, sit and drive a car for eight hours in an eight hour work day. (AR 21, 25.) On August 17, 2006, Dr. Walters, a consulting physician to the Plan, reviewed the medical forms Keller submitted and concluded Keller was "capable of some sort of light duty or sedentary type work." (AR 8.) On August 18, 2008 the Plan notified Keller it was denying his long-term disability benefits claim because he was "capable of performing sedentary work" and therefore no longer met the Plan's definition of total disability. (AR 9.) In this letter, the Plan informed Keller he could appeal the denial

to the Plan Administrator within 180 days or bring a civil action under ERISA after exhausting all of his appeal rights. (AR 9.) On August 21, 2006 the Plan sent Keller another letter stating that "the final assessment indicates you are capable of performing sedentary work, therefore you no longer meet the Plan's definition of 'Total Disability.'" (AR 1.) In this letter, the Plan advised Keller: "You have a right to bring civil action under Section 502 of ERISA" but made no mention of his right to an administrative appeal. (AR 1.)

Keller then filed the instant action in federal court, alleging the Plan violated its terms and his rights under ERISA by: (1) failing to include required information in its letter of denial, including what information was required to perfect Keller's claim and proper notice of the administrative appellate procedure; and (2) failing to adequately investigate the merits of his claim through a vocational analysis. Keller also asks the Court to consider new evidence—the administrative law judge's ("ALJ") decision in Keller's appeal of the denial of his Social Security Disability Income benefits finding that Keller is disabled. (Pl.'s Trial Br. 18.)

## II. DISCUSSION

### A. Exhaustion

Under ERISA, an employee must exhaust his administrative remedies before filing a lawsuit. *See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 961 (9th Cir.2006); *see also Sarraf v. Standard Ins. Co.*, 102 F.3d 991, 993 (9th Cir.1996). Moreover, the Plan explicitly states that "[n]o action shall be commenced under [ERISA], or under any other provision of law, until the Claimant shall first have

---

1. In October 2005 the Plan terminated Keller's "own occupation" benefits. Keller successfully appealed this determination in April 2006, and received retroactive "own occupation" benefits for the duration of the 24 month term. (AR 41, 53–54.)

exhausted the Claims Procedure available to him or her hereunder...." (Plan ¶ 7.05, AR 226.) In an appeal under the Plan, the denied employee "may submit issues and comments in writing to the Plan Administrator for consideration" and "the Appellate Review shall take into account all comments, documents, records and other information submitted by the Covered Employee relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination. The Plan Administrator, in rendering its decision, shall afford no deference to the initial adverse benefit determination...." (Plan ¶ 7.04, AR 235.) In its denial of an employee's claim, the Plan must notify the denied employee of his right to appeal, the information necessary for him to perfect his claim, and the appeal procedure. (Plan ¶ 7.03(d), AR 234; 29 C.F.R. 2560.503–1(g).)

Here, the Plan notified Keller on August 18, 2006 it was denying his claim and he had the right to appeal that decision within 180 days. (AR 9.) However, on August 21, 2006 the Plan sent Keller another letter stating:

> [I]n reply to your letter received July 26, 2006 in which you state you are appealing the denial of your claim for long-term disability ("LTD") benefits ... the final assessment indicates you are physically capable of performing sedentary work.... [W]e are upholding the denial of disability benefits because you no longer meet the Plan's definition of 'Total Disability.' ... You have a right to bring civil action under Section 502 of ERISA.

(AR 1.) Keller understood this second letter as the Plan "advis[ing] him that the denial of his claim was final, and his only remedy was to file a federal lawsuit." (Pl.'s Trial Br. 1.) Thus, Keller did not file an administrative appeal, and instead brought an ERISA suit in federal court.

While this failure to exhaust would usually be grounds for dismissal or remand, an ERISA claim is not "barred by the doctrine of exhaustion if the reason the claimant failed to exhaust is that she reasonably believed, based on what the [plan's written communications] said, that she was not required to exhaust her administrative remedies before filing a lawsuit." *Watts v. BellSouth Telecomms.*, 316 F.3d 1203, 1207 (11th Cir.2003). Here, Keller reasonably believed the second letter's instruction that he could go directly to court because the Plan sent him the second letter without clarifying that the administrative appeal option described in the first letter still stood. Further, the wording of the second letter was confusing, if not misleading. Firstly, the letter claimed Keller "state[d] [he was] appealing the denial of [his] claim." (AR 1.) However, in the letter the Plan refers to, Keller never used the word "appeal" but rather wrote "the purpose of this letter is to confirm that I do want to proceed with my continuing long-term disability." (AR 18.) In addition, the Plan's August 21, 2006 letter advised Keller that this was its "final assessment," it was "upholding the denial," and Keller could bring an ERISA suit. (AR 1.) Accordingly, Keller's claim is not barred by the doctrine of exhaustion.

### B. Standard of Review

In a civil ERISA action, courts use an abuse of discretion standard to review a plan administrator's denial of benefits when a plan grants the plan administrator discretion "to determine eligibility for benefits or to construe the terms of the plan." *Abatie*, 458 F.3d at 963. In reviewing a plan administrator's decision for abuse of discretion, courts may consider only the administrative record, except for the limited purpose of assessing whether a conflict of interest affected the decision-making process. *Id.* at 970. This

limited review is particularly fitting for claims brought under the Plan because the Plan Administrator reviews the denial de novo, and considers "all comments, documents, records and other information submitted by the Covered Employee relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination." (Plan ¶ 7.04, AR 235.)

In the instant case, the Plan explicitly grants the Plan Administrator "discretion to make fact findings and to determine all questions relating to the eligibility of Employees for benefits [and] to construe and interpret the Plan and Trust." (Plan ¶ 9.04, AR 229.) Further, "[w]hether or not Total Disability exists shall be determined by the Plan Administrator in its sole and absolute discretion." (AR 208.) Thus, the Court would apply an abuse of discretion standard to the Plan Administrator's decision regarding Keller's benefits, and the Court would consider only the administrative record.

However, "district courts may take additional evidence whenever procedural irregularities have prevented full development of the administrative record." *Saffon v. Wells Fargo & Co. Long Term Disability Plan,* 522 F.3d 863, 873 n. 2 (9th Cir.2008). Further, "the admission of significant new evidence will require a de novo reconsideration" because the original decision "will perforce have been made without taking into account the new evidence." *Id.* at 874. Here, the Plan prevented Keller from offering additional information such as an opinion from a vocational expert, which would yield a complete record on which to judge the denial. Moreover, by implying in its second letter that Keller's only remedy was to file a civil action in which a court could consider only the administrative record and review for abuse of discretion, the Plan effectively denied Keller the opportu-

nity to respond to its rationale for denying his claim, which is a main purpose of the administrative appeals process, and required by ERISA. *See id.* at 871 (holding that when a plan administrator "tacks on a new reason for denying benefits in a final decision," it violates ERISA because the claimant is unable to respond to the new rationale). Thus, the Court will review Keller's claim de novo and accept the additional evidence he would have been able to submit at an administrative appeal, had the Plan not misadvised him of his right to one.

### C. *Total Disability*

In order to be totally disabled under the Plan's "any occupation" definition, Keller must be completely unable "to perform any and every duty of gainful occupation for which he or she is reasonably fitted by training, education, or experience...." (AR 208.) The Plan denied Keller's long-term disability benefits claim on the ground that he was "capable of performing sedentary work" and therefore no longer met the Plan's definition of total disability. (AR 1, 9.) Keller seeks to submit to the Court the ALJ's favorable decision in Keller's appeal of the denial of his Social Security Disability Income benefits. (Soc. Sec. Admin. Decision, June 14, 2007.) Because the ALJ relied on a vocational expert's testimony in making its decision, Keller also asks the Court to consider this testimony in reviewing his claim.

The parties dispute whether a plan administrator is required to consider vocational expert analysis in determining whether a claimant meets the "any occupation" definition of total disability. However, the issue here is not whether the Plan was required to consult a vocational expert. As explained above, the Plan's misinformation in its second letter denied Keller the opportunity to submit additional informa-

tion, thus preventing full development of the administrative record. *See Saffon,* 522 F.3d at 873 n. 2. Accordingly, the Court will consider Keller's vocational evidence.

The medical reports Keller submitted to the Plan stated he could do only sedentary work that did not involve stress, repetitive lifting above shoulder level or more than occasional lifting greater than 10–15 pounds. (AR 13–26.) Consistent with these opinions, the ALJ in Keller's Social Security appeal found Keller had "the residual functional capacity to perform light and sedentary work with a preclusion to emotional stress, that is, no responsibility for the health, safety and welfare of others." (Soc. Sec. Admin. Decision ¶ 5.) The vocational expert in the Social Security appeal testified that Keller "is unable to perform any past relevant work," and that his "acquired job skills do not transfer to other occupations within [his] residual functional capacity." (Soc. Sec. Admin. Decision ¶¶ 6, 9.) Based in part on this testimony, the ALJ held that in light of Keller's age, education, work experience and residual function capacity, "there are no jobs that exist in significant numbers in the national economy that [Keller] can perform." (Soc. Sec. Admin. Decision ¶ 10.) After fully considering the administrative record as well as the ALJ's decision, the Court finds that Keller is totally disabled under the Plan's "any occupation" definition, and that the Plan wrongfully terminated his long-term disability benefits.

### III. *RULING*

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that judgment be entered in favor of Plaintiff Warren Keller. Keller is totally disabled under the Plan's "any occupation" definition, and as such is entitled to long-term disability benefits under the Plan. In addition, the Plan shall reimburse Keller for long-term disability benefits from February 25, 2006 to the present.

IT IS SO ADJUDGED.